IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re:                                              Chapter 11

Global Home Products LLC, et al.,[1]                Case No. 06-10340 (KG)
                                                    (Jointly Administered)
                        Debtors.
_____
Regal Ware, Inc.,

                        Appellant,
            v.
                                                    Civil Action 06-508 (JJF)
Global Home Products LLC, et al.,

                        Appellees.
_____

**DEBTORS' OPPOSITION TO EMERGENCY MOTION OF REGAL WARE INC. FOR STAY PENDING APPEAL OF ORDER APPROVING MOTION OF THE DEBTORS FOR AN ORDER: (I) APPROVING SALE BY THE WEAREVER DEBTORS OF SUBSTANTIALLY ALL OF THE WEAREVER DEBTORS' OPERATING ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO SECTIONS 363(B), (F) AND (M) OF THE BANKRUPTCY CODE, (II) ASSUMING AND ASSIGNING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Bruce Grohsgal (Bar No. 3583)
Joshua M. Fried (CA Bar No. 181541)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Counsel to Debtors, Global Home Products LLC, et al.

Dated:  August 16, 2006

_____

[1] The Debtors are the following entities:  Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; Mirro Operating Company LLC.

## TABLE OF CONTENTS

**PAGE**

Introduction ................................................................................................ 2

Background ................................................................................................ 5

The Hearing Conducted by the Bankruptcy Court on the Bankruptcy Court Stay Motion ......... 10

Argument ................................................................................................ 12

      A.     Applicable Standard of Review ................................................ 12

      B.     Regal has Failed to Satisfy its Burden of Proof. ...................................... 13

      C.     Regal Has Not Made a Strong Showing That it is Likely to Succeed on the Merits. ............................................................. 14

      D.     Regal Will Not be Irreparably Harmed Absent a Stay. ........................... 17

      E.     A Stay Will Cause Substantial Harm to the Debtors and Their Creditors............................................................................. 19

      F.     Issuance of a Stay Is Not in the Public Interest. ...................................... 20

A Bond of at Least $2,000,000 Should be Required. ................................................. 21

The Emergency Request for Ex Parte Order is Unsupported and Should be Denied.................. 22

**TABLE OF AUTHORITIES**

PAGE

**CASES**

*Cable One CATV,*
    *169 B.R. 488 (Bankr. D.N.H. 1994)* ................................................................. 21

*Coast Cities Truck Sales, Inc. v. Navistar Internat'l Transp. Co. (In re Coast*
    *Cities Truck Sales, Inc.),*
    *147 B.R. 674 (D. N.J. 1992)* ................................................................. 13, 14

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,*
    *847 F.2d 100 (3d Cir. 1988)* ................................................................. 13

*In re 203 North LaSalle Street P'ship,*
    *190 B.R. 595 (N.D.Ill.1995)* ................................................................. 18

*In re ANC Rental Corp.,*
    *No. 01-11220, 2002 WL 1058196 (D. Del. May 22, 2002)* ................................... 14

*In re Blackwell,*
    *162 B.R. 117 (E.D. Pa. 1993)* ................................................................. 14

*In re Buildnet, Inc.,*
    *2002 WL 31103235 (Bank. M.D.N.C. Sept. 20, 2002)* ...................................... 15

*In Re Cellnet Data Systems, Inc.,*
    *327 F.3rd 242 (3d. Cir. 2003)* ................................................................. 12

*In re Charles & Lillian Brown's Hotel, Inc.,*
    *93 B.R. 49 (Bankr. S.D.N.Y. 1988)* ......................................................... 14

*In re Charter Co.,*
    *72 B.R. 70 (Bankr.M.D.Fla. 1987)* ......................................................... 18

*In re Deep,*
    *288 B.R. 27 (N.D.N.Y. 2003)* ................................................................. 14

*In re Del. and Hudson Ry. Co.,*
    *90 B.R. 90 (Bankr. D. Del. 1988)* ........................................................... 13

*In re Golden Books Family Entertainment, Inc.,*
    *269 B.R. 311 (D. Del. 2001)* ................................................................. 15

*In re Kent,*
    *145 B.R. 843 (Bankr.E.D.Va.1991)* ......................................................... 18

*In re Luce,*
    *14 B.R. 529 (S.D.N.Y. 1981)* ................................................................. 17

*In re Olick,*

*No. 96-784, 1996 WL 287344 (E.D. Pa. May 29, 1996)* ....................................................... 15

*In re Patient Education Media,*
    *210 B.R. 237 (Bankr. S.D.N.Y. 1997)* .................................................................................. 15

*In re Pioneer Ford Sales, Inc.,*
    *729 F.2d 27 (1st Cir. 1984)* ................................................................................................ 16

*In re Pub. Serv. Co. of N.H.,*
    *116 BR 347 (Bankr. D.N.H. 1990)* ...................................................................................... 15

*In re Rooster, Inc.*
    *100 B.R. 228 (Bankr. E.D. Pa 1989)* .................................................................................. 15

*In re Shenandoah Realty Partners, L.P.,*
    *248 B.R. 505 (W.D.Va. 2000)* .............................................................................................. 13

*In re The Columbia Gas Sys., Inc.,*
    *1992 U.S. Dist. LEXIS 3253 (D. Del. March 10, 1992)* ...................................................... 15

*In re Trans World Airlines, Inc.,*
    *2001 WL 1820325 (Bkrtcy.D.Del. 2001)* .............................................................................. 18

*In re United Merchants and Mfrs., Inc.,*
    *138 B.R. 426 (D. Del. 1992)* ................................................................................................ 21

*In re Van Ness Auto Plaza, Inc.,*
    *120 B.R. 545 (Bankr. N.D. Cal 1990)* ................................................................................ 16

*In re West Elecs., Inc.,*
    *852 F.2d 79 (3d Cir. 1988)* .......................................................................................... 15, 16

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,*
    *882 F.2d 797 (3d Cir.1989)* ................................................................................................ 21

*Matter of Baldwin United Corporation,*
    *45 B.R. 385 (Bankr. S.D. Ohio 1984)* ................................................................................ 18

*Morgan v. Polaroid Corp, (In re Polaroid Corp.)*
    *No. 02-1353, 2004 WL 253477 (D. Del. Feb. 9, 2004)* ...................................................... 14

*N.C.P. Mktg. Group, Inc.,*
    *337 B.R. 230 (D. Nev. 2005)* .............................................................................................. 17

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merk Consumer Pharm.*
*Co.,*
    *No. 00-5361, 2001 WL 493266 (D. N.J. Jan. 17, 2001)* ...................................................... 15

*Republic of Philippines v. Westinghouse Elec. Corp.,*
    *949 F.2d 653 (3d Cir. 1991)* ................................................................................................ 13

*See In re Continental Airlines,*
    *91 F.3d 553 (3d Cir. 1996)* .................................................................................................. 21

iii

*Smith Corp v. Fed. Trade Comm'n,*
   *530 F.2d 515 (3d Cir. 1976)* ............................................................................................... 18

*Sprint Communications Company v. CAT Communications Int'l,*
   *335 F.3d 235 (3d Cir. 2003)* ............................................................................................... 21

*United States Steel Corp. v. Fraternal Ass'n of Steelhaulers,*
   *431 F.2d 1046 (3d Cir. 1970)* ............................................................................................. 18

*VFB L.L.C. v. The Money's Trust (In re VF Brands, Inc.),*
   *282 B.R. 134 (Bankr. D. Del. 2002)* .................................................................................. 13

*Virginia Dep't of Med. Assist. Svs. v. Shenandoah Realty Partners (In re*
   *Shenandoah Realty Partners,*
   *248 B.R. 505 (W.D.Va. 2000)* ............................................................................................ 18

The above-captioned debtors and debtors in possession in the above referenced chapter 11 cases and appellees in this matter (the "Debtors") hereby file their opposition (the "Opposition") to the *Emergency Motion of Regal Ware, Inc. for Stay Pending Appeal of Order Approving Motion of the Debtors for an Order (I) Approving Sale by the WearEver Debtors of Substantially All of the WearEver Debtors Operating Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief*, filed on August 15, 2006, (the "Stay Motion").

By the Stay Motion, Regal Ware Inc. ("Regal") seeks a stay of the *Order Approving Motion of the Debtors for the Entry of an Order (I) Approving Sale by the WearEver Debtors of Substantially All of WearEver Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (Bankruptcy Court Docket No. 664) (the "Sale Order") entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on August 14, 2006.[2]  The Stay Motion, a substantially identical version of what was denied by the Bankruptcy Court, seeks to stay the effectiveness of the Sale Order solely with respect to the Bankruptcy Court's approval of the assumption and assignment of an exclusive trademark sublicense agreement to Groupe SEB USA ("SEB" or the "Buyer"), the proposed purchaser of

---

[2]  In addition to the Stay Motion, Regal has – without evidentiary support or legal authority – also requested that this Court enter an order staying the effectiveness of the Sale Order pending a hearing on the Stay Motion, so that Regal can effectively obtain the relief it requests without satisfying the required requirements necessary to obtain a stay pending appeal.

1

substantially all of the assets of the WearEver Debtors.[3]   In support of this Opposition, the

Debtors respectfully state as follows:

## Introduction

1.      On August 8, 2006, the Bankruptcy Court conducted a hearing (the "Sale

Hearing") to consider approval of the Sale Motion (defined below) pursuant to which the

Debtors, *inter alia*, moved to assume and assign the Sublicense Agreement (defined below) to

SEB.  After considering substantial and lengthy testimony and evidence submitted by the

Debtors, Regal, and other parties in interest, the Bankruptcy Court found, among other things,

that the exclusive *Trademark Sublicense Agreement* (the "Sublicense Agreement") between

Newell Operating Company ("Newell") and Mirro Operating Company LLC ("Mirro"), one of

the WearEver Debtors, could be assumed and assigned to SEB without Regal's consent.[4]  The

Bankruptcy Court also noted that Regal's refusal to consent to the assignment of the Sublicense

Agreement (even if such consent were required) may be unreasonable under the circumstances.

2.      The Bankruptcy Court signed the Sale Order on August 11, 2006, which

order was entered on August 14, 2006.  On August 12, 2006, Regal filed a motion in the

Bankruptcy Court seeking a stay of the Sale Order pending appeal (the "Bankruptcy Court Stay

Motion").  That motion was denied by the Bankruptcy Court on August 14, 2006 following a 4 ½

hour hearing at which the Bankruptcy Court received and considered testimony from witnesses

offered by Regal, the Debtors and SEB, as well as the argument of counsel, and made factual

findings on the record of the hearing.[5]  The Stay Motion filed with this Court essentially cuts and

---

[3] The WearEver Debtors are Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; and Mirro Operating Company, LLC.

[4] Regal objected in its capacity as Newell's purported assignee under the Sublicense Agreement.

[5] Although the Bankruptcy Court issued its order (the "Bankruptcy Court Order") denying the Bankruptcy Court Stay Motion on August 15, 2006, several hours before Regal filed the Stay Motion, Regal did not attach the order to

2

pastes the same authorities and arguments from the Bankruptcy Court Stay Motion which were

rejected by the Bankruptcy Court. Notwithstanding the fact that the Bankruptcy Court's factual

findings with respect to the Bankruptcy Court Stay Motion were not clearly erroneous, and its

legal conclusions correct, Regal nonetheless requests that this Court impose a stay pending

Regal's appeal of the Sale Order. The direct impact of granting a stay is simple: pursuant to the

Sale Order approved by the Bankruptcy Court, the estates lose their right to $2,000,000 of sale

proceeds under the asset purchase agreement with SEB. The corresponding benefit to Regal is

nil: in the unlikely event that the Bankruptcy Court's decision on the assignability of exclusive

trademark licenses is overturned, the likely disposition on remand is that the Bankruptcy Court

would make final its tentative finding that Regal unreasonably withheld its consent. Thus, while

it is unlikely that Regal could achieve its ultimate goal of preventing an assumption and

assignment of the Sublicense Agreement, it is certain that the Debtors lose their rights under the

asset purchase agreement with SEB to $2,000,000 of the purchase price.

        3.     Although Regal has the burden to establish each of the elements that it

contends justify a stay pending appeal, it has fallen well short of meeting its evidentiary burden

to obtain the extraordinary relief requested in the Stay Motion, just as it did in the Bankruptcy

Court Stay Motion. As the Bankruptcy Court found and concluded in denying the Bankruptcy

Court Stay Motion Hearing, Regal does not satisfy the requirements necessary for a stay pending

appeal:

---

any of its pleadings filed in this court or reference that the order had been entered. A copy of the Bankruptcy Court
Order is annexed hereto as Exhibit A.

3

(1)     It is not probable that Regal will prevail on appeal. The Bankruptcy Court's legal ruling was supported by law and is correct. Simply rearguing the same issues adjudicated in connection with the Sale Order and the Bankruptcy Court Stay Motion is insufficient and merely constitutes a back-door motion for reconsideration of the Sale Order. Moreover, on the factual issue that would ultimately need to be addressed if the appeal succeeds – whether the Sublicense Agreement may be assigned notwithstanding Regal's (unreasonable) withholding of consent – Regal is even less likely to prevail.

(2)     Regal will not suffer irreparable injury. The Bankruptcy Court made explicit findings of fact in connection with the Bankruptcy Court Stay Motion that Regal will not suffer economic harm if the Sale Order is not stayed – which is far short of the irreparable harm that Regal is required to demonstrate to obtain a stay pending appeal. Regal makes no showing that such findings are clearly erroneous. In reality, Regal's argument is based solely on the prospect that its appellate rights may be rendered moot by operation of Section 363(m) of the Bankruptcy Code. But the great weight of authority holds that mootness resulting from the application of Section 363(m) to the sale and assignment does not, as a matter of law, constitute irreparable harm. If it did, all sales would be subject to stays pending appeal. That is not the law.

(3)     The Debtors will incur "substantial harm." Under the asset purchase agreement, the direct consequence of failing to deliver an unstayed order approving the assignment of the Sublicense Agreement by August 18, 2006 is a reduction of $2,000,000 from the purchase price. Regal's proffer to permit the Debtors to utilize the trademark during the appeal does not change that result.

4

(4)    A stay does not promote the public interest. The threat of a stay

pending appeal threatens the loss of $2,000,000 in sale proceeds, and promotes Regal's interest

in gaining bargaining leverage to extract a portion of the sale proceeds from the estates, or

unreasonably seeking to preclude the Debtors from realizing value on account of the Sublicense

Agreement. The public interest favors ensuring the finality of bankruptcy asset sales and

maximizing the return to creditors, over the cynical machinations of a licensor that issued a

freely assignable license that it now regrets.

4.    The facts and the law do not support the issuance of a stay, and Regal has

adduced no evidence that would support its burden to demonstrate otherwise. The Stay Motion

should be denied.

### Background

5.    On July 14, 2006, the Debtors filed their *Motion of the Debtors for an*

*Order: (I) Approving Sale by the WearEver Debtors of Substantially All of the WearEver*

*Debtors' Operating Assets Free And Clear of All Liens, Claims, Encumbrances and Other*

*Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (II) Assuming and*

*Assigning Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief*

(Bankruptcy Court Docket No. 549) (the "Sale Motion"). The Sale Motion sought the sale of

substantially all of the assets (the "Property") of the WearEver Debtors to either Lifetime

Brands, Inc. ("Lifetime"), the stalking horse purchaser of the Property, or, alternatively, to the

highest and best purchaser of such assets.

6.    The asset purchase agreement for the sale of the Property includes the

assumption and assignment of the Sublicense Agreement.

5

7.    Newell licensed the Sublicense Agreement to Mirro in connection with Global Home Products LLC's acquisition of the business of the WearEver Debtors from Newell and certain of its related affiliates.[6] The Sublicense Agreement granted Mirro an exclusive, worldwide royalty-free sublicense to use certain trademarks denoted in the Sublicense Agreement (the "Trademarks") in connection with the manufacture and distribution of certain of its products.

8.    Section 1.3 of the Sublicense Agreement provides that Mirro may not sublicense the use of the Trademarks or assign the Sublicense Agreement without the written consent of Newell, **which consent will not be unreasonably held or delayed** (emphasis added).

9.    Regal was aware of the Sublicense Agreement and the assignment of Newell's rights therein to Mirro, who (prior to the closing of the sale at issue here) is a competitor to Regal in the cookware industry, but Regal did not object or otherwise attempt to interfere with Mirro's rights to use the Trademarks under the Sublicense Agreement.

10.    The Sublicense Agreement derives from a *Trademark License Agreement*, dated as of October 29, 1999 (the "License Agreement") pursuant to which Regal granted Newell an exclusive, worldwide royalty-free sublicense of the Trademarks, in connection with Newell's purchase of Regal's business relating to non-electric aluminum cookware, bakeware and related accessories.

11.    Section 1.3 of the License Agreement allows Newell the unfettered discretion to freely sublicense the use of the Trademarks to other parties. Section 1.3 of the License Agreement also allows Newell the right to transfer the License Agreement, without

---

[6] Global Home Products, one of the Debtors herein, is the ultimate parent of Mirro.

Regal's consent, to an entity that acquires substantially all of Newell's business by merger, consolidation, sale of stock or assets or otherwise, with respect to the Trademarks.

12.    On July 14, 2006, the Court entered its *Order: (I)(A) Approving Sales Procedures and Overbid Protections in Connection with Sale of Substantially All of the Operating Assets Owned by the WearEver Debtors; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale; (C) Approving Notice of Respective Dates, Times and Places for Auction and for Hearing on Approval of (i) Sale and (ii) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (D) Approving Forms of Notice; (II) Approving Inventory Advance Provisions and Granting Security Interests and Superpriority Claim; and (III) Granting Related Relief* (the "Procedures Order") (Bankruptcy Court Docket No 547).

13.    Section 2.5.4 of the asset purchase agreement provides that if the Debtors have not obtained by the closing date of the sale of Property (no later than August 18, 2006), either the consents of Regal and Newell to the assignment of the Sublicense Agreement to the Buyer, or an unstayed order authorizing the assignment of the Sublicense Agreement without such consent, the Buyer is entitled to a purchase price reduction of $2 million.

14.    The Procedures Order fixed August 1, 2006 as the deadline for parties to object to the Sale Motion.

15.    On July 31, 2006 and again on August 2, 2006, the Debtors granted Regal's request for additional time to respond to the Sale Motion because Regal's Delaware counsel represented that it had recently been engaged by Regal on this matter and was uncertain of Regal's position, if any, with respect to the assignment of the Sublicense Agreement.

7

16.    Pursuant to an agreement effective as of August 1, 2006 -- seven days prior to the Sale Hearing-- Newell purportedly assigned its rights, obligations and interests under the Sublicense Agreement to Regal for no stated monetary consideration (the "Assignment Agreement").

17.    Pursuant to the Assignment Agreement, Regal claims to have acquired Newell's rights and interests in the Sublicense Agreement and now purports to be the sublicensor to the Sublicense Agreement with Mirro. It is in such capacity that Regal filed its objection to the Sale Motion, on August 3, 2006, to Mirro's requested assumption and assignment of the Sublicense Agreement to the Buyer.

18.    The basis for Regal's objection to the Sale Motion is that Regal, in its capacity of having purportedly acquired Newell's interests under the Sublicense Agreement pursuant to the Assignment Agreement, refuses to consent to the transfer of the Sublicense Agreement to either Lifetime or SEB. At the Sale Hearing, Regal's witness testified that there was no information that SEB could provide in order for Regal to provide its consent to the Sublicense Agreement. *See* Transcript of Sale Hearing, pg. 237 at lines 23-25, and pg. 238, at line 1. A copy of the Transcript of the Sale Hearing is attached hereto as Exhibit B.

19.    On August 7, 2006, and in accordance with the bidding and sale procedures governing the sale of the Property approved in the Procedures Order, the Debtors conducted an auction for the sale of the Property. At the end of the Auction, SEB was deemed the successful bidder for the purchase of the Property.

20.    After considering substantial and lengthy testimony and evidence submitted by the various parties in interest at the Sale Hearing, the Bankruptcy Court found,

8

among other things, that the exclusive Sublicense Agreement could be assumed and assigned to

SEB, under applicable bankruptcy law, without Regal's consent:

> The Court determines as a matter of law that the Sublicense Agreement is assignable. First, the license to Newell and the Sublicense Agreement to Mirro were exclusive and did not restrict assignment to any particular entity. The cases cited by Regal in support of its objection involve non-exclusive licenses and/or special circumstances not present here. The court relies in its conclusion that the license is assignable on the decision of the United States District court for the District of Delaware in *In re Golden Books*, in which, with respect to a copyright license, the Court held that an exclusive licensee does acquire property rights and may freely transfer its rights. The Sublicense Agreement does not prohibit an assignment, Regal having given up control of the trademark license and has not regained that control. The case of *In re Rooster Inc.* also supports the Court's conclusion, wherein the Court held that an exclusive license for trademarks is freely assignable in that it does not constitute a personal services contract. Accordingly, the Sublicense Agreement is not subject to the limitations of Section 365(c)(1) of the Bankruptcy Code, and as such may be assumed and assigned to the Buyer pursuant to Section 365(b) and (f) of the Bankruptcy Code.

Sale Order at 6. A copy of the Sale Order is attached hereto as Exhibit C.

21.     At the Sale Hearing, the Bankruptcy Court also found that, while it did not

need to reach the issue of whether Regal had unreasonably withheld its consent, "the testimony

that there were no circumstances under which Regal Ware would consent to the assignment to

SEB may be an unreasonable may be an unreasonable withholding of consent." Transcript of

Sale Hearing, pg. 294 lns 24-25, and pg. 295, ln. 1.

9

**The Hearing Conducted by the Bankruptcy Court on the Bankruptcy Court Stay Motion**

22.    On August 11, 2006, Regal announced its intention to file the Bankruptcy

Court Stay Motion, and advised the Bankruptcy Court and other parties in interest that the

Bankruptcy Court Stay Motion would be filed and served by 7:00 p.m. on Friday, August 11,

2006.  Regal did not serve its 31 page Bankruptcy Court Stay Motion until approximately 7:45

a.m. on Saturday, August 12, 2006, over twelve hours later.

23.    The Debtors timely filed their objection to the Bankruptcy Court Stay

Motion on August 14, 2006 prior to the 12:00 p.m. deadline ordered by the Bankruptcy Court.

On August 14, 2006 at 4:00 p.m. (the "Bankruptcy Court Stay Motion Hearing"), the Bankruptcy

Court held a 4 ½ hour hearing on the Bankruptcy Court Stay Motion and considered the evidence

presented and the argument of counsel with respect to such Motion.   Although Regal had

provided no advance evidentiary support in support of the Bankruptcy Court Stay Motion (and

did not indicate that it intended to provide a live witness at the Bankruptcy Court Stay Motion

Hearing), the Bankruptcy Court nonetheless allowed Regal's witness to provide testimony in

support of the Bankruptcy Court Stay Motion.  The Debtors and SEB also provided testimony in

support of their opposition to the Bankruptcy Court Stay Motion.

24.    After careful consideration of the evidence as well as the arguments

provided by Regal, the Debtors, and SEB, the Bankruptcy Court concluded that Regal failed to

meet its burden in order to obtain a stay pending appeal of the Sale Order, and denied the

Bankruptcy Court Stay Motion.

25.    The Bankruptcy Court stated that it carefully considered the law

concerning the assignability of the Sublicense Agreement and believed that it had correctly

10

concluded that applicable nonbankruptcy law permitted the assumption and assignment of the

Sublicense Agreement to SEB. The Bankruptcy Court articulated the difference between non-

exclusive trademark licenses, which were not assignable without the consent of the licensor, and

exclusive trademark licenses, which were freely assignable and noted that Regal had failed to

cite any cases to the contrary. Thus, the Bankruptcy Court reasoned that it had correctly

concluded the Sublicense Agreement, which was a royalty-free exclusive license, could be freely

assigned by the Debtors.

26.    The Bankruptcy Court also found that Regal failed to show irreparable

harm. The Bankruptcy Court rejected Regal's argument that a finding under section 363(m) of

the Bankruptcy Code, in and of itself, constituted irreparable harm. In addition, the Bankruptcy

Court found that even if the Sublicense Agreement were assigned, there would be no economic

harm to Regal because SEB would use the Trademarks in the same manner in which Mirro

currently uses the Trademarks. The Bankruptcy Court further found that Regal failed to

demonstrate how it would incur actual harm if the Sublicense Agreement were assigned to SEB

and that the Bankruptcy Court could not rely on speculative harm hypothesized by Regal.

27.    The Bankruptcy Court also concluded that public policy considerations

militated in favor of denying the Bankruptcy Court Stay Motion. The Bankruptcy Court rejected

Regal's argument that the Bankruptcy Court's decision would create uncertainty in the field of

trademark law as the Bankruptcy Court's decision denying the Bankruptcy Court Stay Motion

was an unpublished decision of small precedential value. The Bankruptcy Court also rejected

Regal's argument that the Bankruptcy Court had not had a sufficient opportunity to articulate the

legal conclusions in support of the Bankruptcy Court's granting of the Sale Motion with respect

to the assumption and assignment of the Sublicense Agreement.

**Argument**

A.     **Applicable Standard of Review**

28.     By the Stay Motion, Regal is requesting that this Court review the

Bankruptcy Court's decision to deny the Bankruptcy Court Stay Motion. In reviewing orders of

the Bankruptcy Court, findings of fact are reviewed under a "clearly erroneous" standard, and

conclusions of law are reviewed *de novo*. *See* Fed. R. Bank. P. 8013. *See In Re Cellnet Data

Systems, Inc.*, 327 F.3rd 242, 244 (3d. Cir. 2003).

29.     The record of the Sale Hearing and the Bankruptcy Court Stay Motion

Hearing shows that the Bankruptcy Court received testimony from all parties in interest on the

factual and legal issues raised by Regal in both its objection to the Sale Motion and the

Bankruptcy Court Stay Motion. The Bankruptcy Court Stay Motion Hearing alone received

nearly four hours of oral testimony from various witnesses on the factual issues alleged in the

Bankruptcy Court Stay Motion and the Debtors' and SEB's oppositions thereto. As more fully

set forth below, the Bankruptcy Court found that Regal had not demonstrated that it would incur

any economic harm – let alone irreparable harm – in order to obtain the extraordinary remedy of

a stay. In addition, the Bankruptcy Court found that public policy would be furthered by

fostering the finality of sales. This is because entry of the Sale Order would benefit the Debtors'

collective economic constituency, as opposed to staying the Stay Order simply to benefit one

private party (Regal) on an issue that Regal is ultimately likely to lose even if this matter were

remanded to the Bankruptcy Court.

30.    The Bankruptcy Court correctly applied each of the factors required to obtain a stay of an order pending appeal and concluded that Regal had failed to satisfy any of them in order to obtain the extraordinary relief requested in the Bankruptcy Court Stay Motion and requested again in the Stay Motion filed with this Court.

## B.    Regal has Failed to Satisfy its Burden of Proof.

31.    The standard governing a stay pending appeal is the same as that for a preliminary injunction. *VFB L.L.C. v. The Money's Trust (In re VF Brands, Inc.)*, 282 B.R. 134, 137 (Bankr. D. Del. 2002); *In re Del. and Hudson Ry. Co.*, 90 B.R. 90, 91 (Bankr. D. Del. 1988). In determining whether to stay an order pending appeal, the Court must examine the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). The grant of injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Coast Cities Truck Sales, Inc. v. Navistar Internat'l Transp. Co. (In re Coast Cities Truck Sales, Inc.)*, 147 B.R. 674, 676 (D. N.J. 1992) (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)) (emphasis added).

32.    "The party moving for a stay has the burden on each of these elements." *In re Shenandoah Realty Partners, L.P.*, 248 B.R. 505, 510 (W.D.Va. 2000) (emphasis added). "If a party fails to establish **one** of the four prongs, a court may deny the requested stay."

*Morgan v. Polaroid Corp*, (*In re Polaroid Corp.*) No. 02-1353, No. 01-10864, 2004 WL 253477,

at \*1 (D. Del. Feb. 9, 2004) (citing *In re ANC Rental Corp.*, No. 01-11220, 2002 WL 1058196,

at \*2 (D. Del. May 22, 2002) (emphasis added); *In re Blackwell*, 162 B.R. 117, 120 (E.D. Pa.

1993). *See also In re Deep*, 288 B.R. 27, 30 (N.D.N.Y. 2003) ("Movant's failure to satisfy one

prong of the standard for granting a stay pending appeal dooms the motion.").

      33.      Regal must prove each of the four factors with "clear and satisfactory"

evidence. *In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 54 (Bankr. S.D.N.Y. 1988)

(denying motion under Bankruptcy Rule 8005 because movant's "affidavit lacks the clear and

satisfactory evidence that is required under FRBP 8005"). Notwithstanding multiple

opportunities to present evidence on the merits of the Stay Motion, Regal has not met its burden

of proof to establish any of the predicates for a stay pending appeal. Moreover, while the Stay

Motion recites some of the testimony adduced at the Bankruptcy Court Stay Motion Hearing, it

does not even attempt to argue that such testimony and the Bankruptcy Court's findings in

connection therewith, provide any basis for concluding that the Bankruptcy Court's findings

were clearly erroneous in denying the Bankruptcy Court Stay Motion. Therefore, the Stay

Motion should be denied.

**C.**      **Regal Has Not Made a Strong Showing That it is Likely to Succeed on the Merits.**

      34.      A strong showing that Regal is likely to succeed on the merits requires

more than simply arguing or rearguing serious legal or factual issues. Rather, "[l]ikelihood of

success on the merits means that a movant has a "substantial case,' or a strong case on appeal."

*In re Coast Cities Truck Sales, Inc.*, 147 B.R. at 676 (citing *In re The Columbia Gas Sys., Inc.*,

14

1992 U.S. Dist. LEXIS 3253 at *4 (D. Del. March 10, 1992); *In re Pub. Serv. Co. of N.H.,* 116 BR 347, 349 (Bankr. D.N.H. 1990).

35.    Instead, the Stay Motion restates the same arguments already twice rejected by the Bankruptcy Court. More is required to justify the extraordinary remedy sought. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Mecrk Consumer Pharm. Co.,* No. 00-5361, 2001 WL 493266, at *1 (D. N.J. Jan. 17, 2001) (denying motion for stay pending appeal when appellant raised the same arguments previously presented to the court and granting the motion would effectively be a reconsideration and reversal of court's prior decision). *In re Olick,* No. 96-784, 1996 WL 287344, at *1 (E.D. Pa. May 29, 1996) (same).

36.    The Bankruptcy Court ruled correctly that an exclusive trademark may be assumed and assigned, and assignment is not barred under section 365(c) of the Bankruptcy Code or the Third Circuit's teachings in *In re West Elecs., Inc.,* 852 F.2d 79 (3d Cir. 1988). The ruling is logical and consistent with existing law pertaining to exclusive licenses of trademarks and copyrights. *In re Rooster, Inc.* 100 B.R. 228 (Bankr. E.D. Pa 1989) (deciding one year after *West Electronics* decision that assumption and assignment of an exclusive trademark license agreement did not violate 11 U.S.C. § 365(c)); *In re Golden Books Family Entertainment, Inc.,* 269 B.R. 311, 319 (D. Del. 2001) (exclusive copyright license is freely assignable under § 365); *In re Buildnet, Inc.,* 2002 WL 31103235, *5 (Bank. M.D.N.C. Sept. 20, 2002) (same, noting that "[t]he Copyright Act distinguishes between exclusive and non-exclusive licenses); *In re Patient Education Media,* 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997) (same).

37.    Just as it did in the Bankruptcy Court Stay Motion, Regal presents this Court with the same inapplicable cases, because they either involve non-exclusive license

15

agreements, or because they do not address the assumption and assignment of trademark licenses at all. Regal makes the sophistic argument that the authority on the assignability of exclusive copyright licenses is inapplicable, because such assignability is premised on ownership and the Sublicense Agreement contains recitals acknowledging that Mirro was not the owner of the Trademarks. But Regal presents no authority remotely suggesting that recitals of this nature carry any legal weight at all. Presumably, countless copyright licenses also contain similar recitals, yet the law is clear that if the license is exclusive, it may be assigned.

38.    Regal also regurgitates the same factually inapposite cases cited in the Bankruptcy Court Stay Motion that do not even address the assumption and assignment of trademark licenses. For example, the Stay Motion asserts that that "a trademark licensor can refuse consent to an assignment of a trademark license." *See* Stay Motion; pg. 21. However, the cases relied upon Regal in support this conclusion do not address trademarks or trademark licenses. Rather, all of the following cases cited in the Stay Motion deal with the assumption and assignment of automobile franchise agreements or government contracts rather than the issue of the assumption and assignment of trademark licenses, even though the Stay Motion claims otherwise. *See In re Pioneer Ford Sales, Inc.*, 729 F.2d 27 (1st Cir. 1984) (addressing the assumption/assignment of a Ford franchise agreement); *Ford Motor Co. v. Claremont Acquisition Corp., Inc. (In re Claremont Acquisition Corp., Inc.)* (9th Cir. 1995) (addressing the assumption and assignment of different automobile franchise agreements); *In re Van Ness Auto Plaza, Inc.*, 120 B.R. 545 (Bankr. N.D. Cal 1990) (addressing the assignment of a Porsche automobile franchise agreement); *see also In re West Elecs. Inc.*, 852 79 (3d Cir. 1988) (addressing the United States' right to terminate a defense contract that could not be assumed

16

and assigned by the debtor). Just as Regal did in the Bankruptcy Court Stay Motion, in at least

one instance at the end of the first paragraph of page 20 of the Stay Motion, Regal attributes a

quotation purportedly reciting the Third Circuit's rule governing assumption and assignment of

contracts to the case of *N.C.P. Mktg. Group, Inc.*, 337 B.R. 230, 237 (D. Nev. 2005) even though

that quotation appears nowhere in the *N.C.P.* case.

        39.      Regal's reliance on *In re Luce,* 14 B.R. 529 (S.D.N.Y. 1981) is similarly

misplaced. In *Luce,* a non-operating debtor attempted to assume (but not assign) an agreement

with Fruit of the Loom, Inc. with respect to the manufacture and sale of products using the Fruit

of the Loom trademark. *Luce,* 14 B.R. at 530-31. The debtor contracted with a discount clothing

manufacturer, Fashion House, to act as the debtor's "contractor" to manufacture garments using

the Fruit of the Loom name in return for a portion of the proceeds. *Id.* at 530-31. The court

reasoned, among other things, that there was no adequate assurance of future performance that

would protect the licensor as there was no "assurance whatsoever of continued performance on

the Debtor's side of the License Agreement." *Id.* at 532. Moreover, although not expressly

stated, it appears that the trademark license at issue in Luce was a nonexclusive license because

the bankruptcy court concluded that if licensor "Fruit of the Loom, Inc. had wished to franchise

Fashion House as a licensee, it could have done so." *Id.* at 532. This is factually inapposite to

the situation at bar in which Mirro intends to assume *and assign* the exclusive Sublicense

Agreement to a company with approximately $3 billion per year in revenues. Moreover, Regal

has not objected to the assumption and assignment of the Sublicense Agreement on adequate

assurance grounds.

**D.**     **Regal Will Not be Irreparably Harmed Absent a Stay.**

40.     "[A] preliminary injunction shall not issue except upon a showing of

irreparable injury." *Smith Corp v. Fed. Trade Comm'n*, 530 F.2d 515, 525 (3d Cir. 1976)

(quoting *United States Steel Corp. v. Fraternal Ass'n of Steelhaulers*, 431 F.2d 1046, 1048 (3d

Cir. 1970)).

41.     The Stay Motion's argument of irreparable harm is premised on the

prospect that its appeal may be rendered moot by operation of Section 363(m) of the Bankruptcy

Code.  As correctly noted by the Bankruptcy Court at the Bankruptcy Court Stay Motion

Hearing, the law is to the contrary. "Even if § 363(m) adversely impacts the EEOC's objection,

'[i]t is well settled that an appeal being rendered moot does not itself constitute irreparable

harm.'" *In re Trans World Airlines, Inc.*, 2001 WL 1820325, *10 (Bkrtcy.D.Del. 2001) (quoting

*In re 203 North LaSalle Street P'ship*, 190 B.R. 595, 598 (N.D.Ill.1995) and citing to *Virginia*

*Dep't of Med. Assist. Svs. v. Shenandoah Realty Partners (In re Shenandoah Realty Partners*,

248 B.R. 505, 510 (W.D.Va. 2000); *In re Kent*, 145 B.R. 843, 844 (Bankr.E.D.Va.1991); *In re*

*Charter Co.*, 72 B.R. 70, 72 (Bankr.M.D.Fla. 1987)).  As the Court noted in *Matter of Baldwin*

*United Corporation*, 45 B.R. 385, 386 (Bankr. S.D. Ohio 1984):

> Movants assert that under § 363(m), the validity of dispositions is not affected by
> reversal or modification of the Bankruptcy Court's order on appeal, and that only a stay
> will prevent their appeal from being moot. In essence, they suggest that the operation of
> § 363(m) will cause them irreparable harm, an assertion better addressed to Congress
> than this Court. *If we were to accept this argument, then every order allowing a use,*
> *sale, or lease of property under § 363(b) should be stayed pending appeal, a result*
> *clearly contrary to the purpose of § 363(m).*

*Id.* at 386 (emphasis added).[7]

---

[7] It is unclear whether Regal also argues that it will suffer harm by reason of any purported risk of quality issues
with respect to goods bearing the Trademarks. Any such argument is specious. Nothing about the assignment
impairs whatever quality control rights Regal has under the Sublicense Agreement, and there is no evidence of any
such risk in this case.

18

42.    Even though not discussed in the context of the section of the Stay Motion addressing irreparable harm, (*See,* Stay Motion at pages 30-32), the Stay Motion devotes four pages to partially reciting the testimony that the Bankruptcy Court considered from Regal, the Debtors and SEB on purported harm to Regal in the event the Bankruptcy Court Stay Motion was not granted.  While the Stay Motion provides an incomplete recitation of the record of the Bankruptcy Court Stay Motion Hearing and omits testimony adduced at the hearing, it is undisputed that the Bankruptcy Court considered over four hours of evidence and argument on the factual issues of the Stay Motion, in addition to the testimony considered by the Bankruptcy Court at the Sale Hearing with respect to Regal's objection to the Sale Motion.  The Bankruptcy Court concluded that Regal had failed to demonstrate the necessary irreparable harm required to obtain a stay of the Sale Order.

43.    Indeed, as noted by the Bankruptcy Court at the Bankruptcy Court Stay Motion Hearing, Regal will not incur any irreparable harm because there was no evidence to indicate that the Trademarks will be used any differently by SEB than by Mirro, the current sublicensee.  The Bankruptcy Court also correctly noted that Regal could not rely on speculation as to whether it would suffer irreparable harm; there must be actual irreparable harm that would result if the stay were not granted.  In the absence of any evidence to demonstrate actual irreparable harm to Regal, the Bankruptcy Court's factual findings in denying the Bankruptcy Court Stay Motion on this ground as well were correct, let alone not clearly erroneous.

E.    **A Stay Will Cause Substantial Harm to the Debtors and Their Creditors.**

19

44.     As set forth above, under the asset purchase agreement with SEB, the Debtors will receive $2,000,000 less if they do not deliver Regal's consent or an unstayed order approving the assignment of the Sublicense Agreement over Regal's objection by August 18, 2006. That is substantial harm.

45.     In arguing against a bond, Regal contends that the Debtors will suffer no loss because Regal is offering to permit the uninterrupted use of the Trademarks during the pendency of the appeal. Regal reasons that all of the parties in interest have an incentive to preserve and maximize the value of the Trademarks, that its offer enables the Debtors to do so, and therefore the status quo is being maintained and no bond is needed.

46.     Regal's argument is illogical and speculative, and transfers the full risk of damages from the award of the stay onto the Debtors and their creditors. Regal's purported offer to allow use of the Trademarks during the pendency of the appeal (a right the Debtors have in any event) is beside the point. The Debtors stand to lose $2,000,000 in the absence of an unstayed order permitting the assignment of the Sublicense Agreement pursuant to the Asset Purchase Agreement. Regal's conjecture that the Buyer will agree to some other arrangement to minimize its damages is irrelevant. What is certain is that the Debtors lose their rights under the Asset Purchase Agreement to $2,000,000 if Regal obtains the relief it is seeking.

**F.     Issuance of a Stay Is Not in the Public Interest.**

47.     A stay does not promote the public interest. As the Bankruptcy Court found at the Bankruptcy Court Stay Motion Hearing, the public interest in a bankruptcy case favors the finality of sales. This finding of fact is not clearly erroneous. Indeed, Bankruptcy Code section 363(m) furthers that public interest by promoting the finality of bankruptcy sales.

20

*See Cable One CATV*, 169 B.R. 488, 492 (Bankr. D.N.H. 1994) ("The policy behind § 363(m) is

to promote finality in judgments and encourage the obtaining of maximum value of assets

notwithstanding the risks associated with bankruptcy sales.").

48.    The public interest is promoted in this case by permitting the sale to close

on the terms approved by the Court. Those terms include the assumption and assignment of the

Sublicense Agreement. A stay deprives the estates of $2,000,000, for the benefit of a private

litigant that seeks to prevent assumption and assignment of the Sublicense Agreement for its own

unreasonable purposes. Such a result is unwarranted and inequitable.

## A Bond of at Least $2,000,000 Should be Required.

49.    "Bankruptcy Rule 8005 allows the Court, in its discretion, to condition a

stay pending appeal on the filing of a bond. The purpose of Rule 8005 is to protect the adverse

party from potential losses resulting from the stay." *In re United Merchants and Mfrs., Inc.*, 138

B.R. 426, 430 (D. Del. 1992) (citations omitted). The injunction bond "provides a fund to use to

compensate incorrectly enjoined defendants." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*,

882 F.2d 797, 804 (3d Cir.1989) (quotations omitted); *Sprint Communications Company v. CAT

Communications Int'l*, 335 F.3d 235, 239-40 (3d Cir. 2003). The failure of Regal to offer to

immediately post a bond as a condition to obtaining a stay is another reason, among many, for

the Court to deny the Stay Motion. *See In re Continental Airlines*, 91 F.3d 553, 562 (3d Cir.

1996) (noting that the district court's denial of the stay was based in part on the unwillingness of

the appellants to post a satisfactory bond).

50.    As outlined above, the asset purchase agreement clearly provides that the

Debtors lose their rights to $2,000,000 from the issuance of a stay. Regal's argument that a stay

will preserve the "status quo" during its appeal is misguided. Properly analyzed, the "status quo" is that the Debtors are holders of an assignable Sublicense Agreement that they are authorized to transfer to the Buyer, and receive $2,000,000 as part of the purchase price for doing so. Regal's appeal, and more specifically its request for a stay pending appeal, changes the status quo by effectively excluding the Sublicense Agreement from the sale thereby allowing the Buyer to reduce the purchase price by $2,000,000 under the asset purchase agreement. This result is untenable. Regal should not be permitted to impose these burdens and risks on the Debtors in order to avoid its obligation to post a bond as a condition of the extraordinary relief it seeks. Any bond should properly be fixed at a minimum of $2,000,000, exclusive of the Buyer's request for a bond in respect of its own prospective damages from a stay pending appeal. This should be posted as a bond or comparable security.

51.    Given that Regal seeks an immediate stay of the Sale Order, it is unclear what Regal means in requesting a "reasonable amount of time to comply" with any bond requirement that the Court may require. *See* Stay Motion, pg 36. Any imposition of a stay without the posting of a bond to adequately protect the Debtors from Regal's actions is inconsistent with the very purpose of a bond – to protect the prevailing party from the wrongful issuance of an injunction – and Regal's apparent attempt to obtain a stay without first posting a bond should be rejected.

**The Emergency Request for Ex Parte Order is Unsupported and Should be Denied.**

52.    Regal further requests that this Court immediately enter an ex parte order staying the sale. This request is unwarranted and should be denied as it would enable Regal to obtain the relief requested in the Stay Motion without satisfying any of the requirements

22

necessary to obtain a stay pending appeal. Bankruptcy Rule 7065 provides that a temporary

restraining order may be granted on an <u>ex parte</u> basis without written or oral notice to the adverse

party only if (1) it clearly appears from specific facts shown by affidavit or by verified complaint

that immediate and irreparable injury, loss or damage will result to the applicant before the other

party (in this case, the Debtors, or their counsel), can be heard in opposition, and (2) the

applicant certifies its efforts to notify the adverse party and the reasons supporting the claim that

notice should not be required.

53.    Regal has fulfilled none of the requirements for an <u>ex parte</u> order, and in

any event, the facts of this case do not support its issuance. Regal Ware has not filed the

required affidavit or verified complaint setting forth the specific facts that would cause

immediate and irreparable injury. Debtors' counsel have been notified of Regal's requested

relief, have filed this Opposition to the Stay Motion, and are available for any hearing that the

Court may wish to schedule. Moreover, as set forth in paragraph 41 <u>et seq.</u> of this Opposition,

Regal will not be irreparably harmed if a stay of the Sale Order is not issued. Indeed, it is the

Debtors who will be harmed if a stay is ordered for the reasons set forth herein. For the reasons

stated above, the Court should deny Regal's request for <u>ex parte</u> relief.

23

WHEREFORE, for the reasons stated above, the Debtors respectfully request that this Court deny the Stay Motion and grant such other and further relief as the Court deems just and proper.

Dated: August 16, 2006

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Bruce Grohsgal (Bar No. 3583)
Joshua M. Fried (CA Bar No. 181541)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszyjw.com
dbertenthal@pszyjw.com
bgrohsgal@pszyjw.com
jfried@pszyjw.com

Counsel to Debtors, Global Home Products LLC, et al.

24

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GLOBAL HOME PRODUCTS LLC, et al.,[1] | Case No. 06-10340 (KG) (Jointly Administered) |
| Debtors. | |

| | |
|---|---|
| REGAL WARE, INC., | |
| Appellant, | |
| v. | Civil Action No. 06-508 (JJF) |
| GLOBAL HOME PRODUCTS LLC, et al., | |
| Appellees. | |

## CERTIFICATE OF SERVICE

I, Sandra G. M. Selzer, hereby certify that on the 16th day of August, 2006, I

caused a copy of the following document(s) to be served on the individuals on the attached

service list(s) in the manner indicated:

> **Debtors' Opposition to Emergency Motion of Regal Ware, Inc. for Stay Pending Appeal of Order Approving Motion of the Debtors for an Order: (I) Approving Sale By the WearEver Debtors of Substantially All of the WearEver Debtors' Operating Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363(b), (b) and (m) of the Bankruptcy Code, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief; and Appendix**

Sandra G. M. Selzer (Bar No. 4283)

---

[1] The Debtors are the following entities:  Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; Mirro Operating Company LLC.

| Recipient | Company | E-mail |
|---|---|---|
| Debtors<br>Randal Rombeiro<br>Jeff Matthews | Global Home Products, LLC | Randal.Rombeiro@globalhomeproducts.com<br>jeff.matthews@globalhomeproducts.com |
| Counsel to the Official Committee of Unsecured Creditors<br>Bruce Buechler, Esq.<br>Kenneth A. Rosen, Esq.<br>Sharon L. Levine, Esq. | Lowenstein Sandler PC | bbuechler@lowenstein.com<br>krosen@lowenstein.com<br>slevine@lowenstein.com |
| Counsel to the Official Committee of Unsecured Creditors<br>David M. Fournier, Esq.<br>Evelyn J. Meltzer, Esq. | Pepper Hamilton LLP | fournierd@pepperlaw.com<br>meltzere@pepperlaw.com |
| Counsel to Wachovia, N.A.<br>Joseph H. Huston, Jr., Esq.<br>Thomas G. Whalen, Jr., Esq. | Stevens & Lee, P.C. | jhh@stevenslee.com<br>tgw@stevenslee.com |
| Counsel to the Wachovia, N.A.<br>Jonathan N. Helfat, Esq.<br>Matthew J. Miller, Esq.<br>Richard G. Haddad, Esq.<br>Daniel F. Fiorillo, Esq.<br>Steven B. Soll, Esq.<br>Steven B. Soll, Esq. | Otterbourg, Steindler, Houston & Rosen, P.C. | jhelfat@oshr.com<br>mmiller@oshr.com<br>rhaddad@oshr.com<br>dfiorillo@oshr.com<br>ssoll@oshr.com<br>giztom@aol.com |
| Counsel to Madeleine L.L.C.<br>Jesse H. Austin, III, Esq. | Paul, Hastings, Janofsky & Walker LLP | jessaustin@paulhastings.com |
| Counsel to Madeleine L.L.C.<br>Robert J. Dehney, Esq.<br>Derek C. Abbott, Esq. | Morris, Nichols, Arsht & Tunnell LLP | rdehney@mnat.com<br>dabbott@mnat.com |
| Counsel to Global Home Products Investors, LLC<br>Adam G. Landis, Esq.<br>Kerri K. Mumford, Esq. | Landis Rath & Cobb LLP | landis@lrclaw.com<br>mumford@lrclaw.com |
| Counsel to Global Home Products Investors, LLC<br>Michael L. Cook, Esq.<br>Sophie S. Kim, Esq. | Schulte Roth & Zabel LLP | Michael.cook@srz.com<br>sophie.kim@srz.com |
| Counsel to Cerberus, L.P.<br>Daniel V. Oshinsky, Esq. | Schulte Roth & Zabel LLP | daniel.oshinsky@srz.com |
| Counsel to Regal Ware, Inc.<br>Steven K. Kortanek, Esq. | Klehr, Harrison, Harrison, Branzburg & Ellers LLP | skortanek@klehr.com |

| Recipient | Company | Email |
|---|---|---|
| Counsel to Regal Ware, Inc.<br>Morton R. Branzburg, Esq. | Klehr, Harrison, Harrison, Branzburg & Ellers LLP | mbranzburg@klehr.com |
| Counsel to Regal Ware, Inc.<br>Daniel R. Johnson, Esq. | Ryan Kromholz & Manion, S.C. | djohnson@rkmiplaw.com |
| Counsel to SEB S.A. and SEB USA<br>Gregg M. Galardi, Esq.<br>Matthew P. Ward, Esq.<br>N. Lynn Hiestand, Esq.<br>Christian Pilkington, Esq.<br>Neil Devaney, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | ggalardi@skadden.com<br>mpward@skadden.com<br>lhiestan@skadden.com<br>cpilking@skadden.com<br>ndevaney@skadden.com |
| Counsel to Lifetime Brands, Inc.<br>Ronald S. Gellert, Esq.<br>Michael Busenkell, Esq. | Eckert Seamans Cherin & Mellott, LLC | rgellert@eckertseamans.com<br>mbusenkell@eckertseamans.com |
| Counsel to Lifetime Brands, Inc.<br>Neil E. Herman, Esq.<br>Leonard Klingbaum, Esq. | Morgan, Lewis & Bockius, LLP | nherman@morganlewis.com<br>lklingbaum@morganlewis.com |
| Counsel to Citigroup<br>Joseph H. Smolinsky, Esq. | Chadbourne & Parke LLP | jsmolinsky@chadbourne.com |

GHP – Service List for Debtors' Opposition to
Regal Ware Motion for Stay Pending Appeal
Case No.  06-10340 (KG)
Document No. 120548
08 – Hand Delivery
10 – Overnight Delivery
01 – Foreign Overnight Delivery


**Hand Delivery**
(Counsel to Regal Ware, Inc.)
Steven K. Kortanek, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers
LLP
919 North Market Street, Suite 1000
Wilmington, DE  19801

**Hand Delivery**
(Counsel to SEB S.A. and SEB USA)
Gregg M. Galardi, Esq.
Matthew P. Ward, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE  19801

**Hand Delivery**
(United States Trustee)
Mark Kenney, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 North King Street, Suite 2207
Lockbox 35
Wilmington, DE  19801

**Hand Delivery**
(Counsel to the Official Committee of
Unsecured Creditors)
David M. Fournier, Esq.
Pepper Hamilton LLP
1313 Market Street, Suite 5100
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Wachovia Bank, National
Association)
Joseph H. Huston, Jr., Esq.
Thomas G. Whalen, Jr., Esq.
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Madeleine, L.L.C.)
Robert J. Dehney, Esq.
Derek C. Abbott, Esq.
Morris, Nichols, Arsht & Tunnell LLP
Chase Manhattan Centre
1201 North Market Street, 18th Floor
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Global Home Products Investors,
LLC)
Adam G. Landis, Esq.
Kerri K. Mumford, Esq.
Landis Rath & Cobb LLP
919 North Market Street, Suite 600
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Lifetime Brands, Inc.)
Ronald S. Gellert, Esq.
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1360
Wilmington, DE  19801

**Overnight Delivery**
(Counsel to the Official Committee of
Unsecured Creditors)
Sharon Levine, Esq.
Bruce Buechler, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ  07068-1791

**Overnight Delivery**
(Debtors)
Randal Rombeiro, Chief Financial Officer
Global Home Products, LLC
550 Polaris Parkway, Suite 500
Westerville, OH  43082

**Overnight Delivery**
(Counsel to Wachovia Bank, National
Association)
Jonathan N. Helfat, Esq.
Matthew J. Miller, Esq.
Otterbourg, Steindler, Houston & Rosen, P.C.
230 Park Avenue
New York, NY 10169-0075

**Overnight Delivery**
(Counsel to Madeleine L.L.C.)
Jesse H. Austin, III, Esq.
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E., Suite 2400
Atlanta, GA 30308

**Overnight Delivery**
(Counsel to Global Home Products Investors,
LLC)
Michael L. Cook, Esq.
Sophie S. Kim, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

**Overnight Delivery**
(Counsel to Cerberus, L.P.)
Daniel V. Oshinsky, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

**Overnight Delivery**
(Counsel to Lifetime Brands, Inc.)
Neil E. Herman, Esq.
Leonard Klingbaum, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178

**Overnight Delivery**
(Counsel to Regal Ware, Inc.)
Morton R. Branzburg, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers
LLP
260 South Broad Street, Suite 400
Philadelphia, PA 19102

**Overnight Delivery**
(Counsel to Regal Ware, Inc.)
Daniel R. Johnson, Esq.
Ryan Kromholz & Manion, S.C.
3360 Gateway Road
Brookfield, WI 53045

**Overnight Delivery**
(Counsel to Citigroup)
Joseph H. Smolinsky, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

**Foreign Overnight Delivery**
(Counsel to SEB S.A. and SEB USA)
N. Lynn Hiestand, Esq.
Christian Pilkington, Esq.
Neil Devaney, Esq.
Skadden, Arps, Slate, Meagher & Flom (UK)
LLP
40 Bank Street
Canary Wharf, London E14 5DS
ENGLAND