IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GLOBAL HOME PRODUCTS LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 06-10340 (KG)<br>(Jointly Administered) |
| REGAL WARE, INC.,<br><br>Appellant,<br><br>v.<br><br>GLOBAL HOME PRODUCTS LLC, et al.,<br><br>Appellees. | Civil Action No. 06-508 (JJF) |

**APPENDICES OF UNREPORTED DECISIONS IN CONNECTION WITH THE DEBTORS' OPPOSITION TO EMERGENCY MOTION OF REGAL WARE, INC. FOR STAY PENDING APPEAL OF ORDER APPROVING MOTION OF THE DEBTORS FOR AN ORDER: (I) APPROVING SALE BY THE WEAREVER DEBTORS OF SUBSTANTIALLY ALL OF THE WEAREVER DEBTORS' OPERATING ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO SECTIONS 363(B), (F) AND (M) OF THE BANKRUPTCY CODE, (II) ASSUMING AND ASSIGNING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Dated: August 16, 2006

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Bruce Grohsgal (Bar No. 3583)
Joshua M. Fried (CA Bar No. 181541)
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to Debtors, Global Home Products LLC, et al.

[1] The Debtors are the following entities: Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; Mirro Operating Company LLC.

# TABLE OF CONTENTS

| Tab No. | Case |
|---|---|
| 1 | *In re ANC Rental Corp.,*<br>*No. 01-11220, 2002 WL 1058196 (D. Del. May 22, 2002)* |
| 2 | *In re The Columbia Gas Sys., Inc.,*<br>*1992 U.S. Dist. LEXIS 3253 (D. Del. March 10, 1992)* |
| 3 | *In re Trans World Airlines, Inc.,*<br>*2001 WL 1820325 (Bkrtcy.D.Del. 2001)* |
| 4 | *Morgan v. Polaroid Corp, (In re Polaroid Corp.)*<br>*No. 02-1353, 2004 WL 253477 (D. Del. Feb. 9, 2004)* |
| 5 | *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,*<br>*No. 00-5361, 2001 WL 493266 (D. N.J. Jan. 17, 2001)* |

# TAB NO. 1

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1058196 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**H**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
In re: ANC RENTAL CORP., et al. Debtors.
THE HERTZ CORPORATION, et al. Appellants,
v.
ANC RENTAL CORP., et al. Appellees.
**Nos. 01-11220(MFW), Civ.A. 02-154, Civ.A. 02-175, Civ.A. 02-288, Civ.A. 02-299, Civ.A. 02-360, 02-364-GMS.**

May 22, 2002.

*AMENDED MEMORANDUM AND ORDER*

SLEET, J.

*1 On February 27, 2002, the Hertz Corporation ("Hertz") and Avis Rent a Car System Inc. ("Avis") filed the first of several expedited appeals from the orders of the Honorable Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware. Several subsequent appeals were filed. (Case Nos. 02-175 and 02-288 though and including 02-299). In particular, the appellants sought review of the January 28, 2002 and March 20, 2002 orders of the bankruptcy court that permitted the debtor to reject certain of their concession contracts and subsequently negotiate more favorable contracts at seven national airports. On March 25, 2002, Hertz filed a motion for a stay pending the appeals (D.I.18-02-154), and Avis joined in that motion. (D.I.20-02-154). On May 3, 2002, the bankruptcy court entered another order that permitted the debtor to reject contracts at four more airports. An appeal of this order was filed on May 10, 2002. (D.I.1-02-360.) Hertz filed an emergency motion for a stay pending this appeal on May 13, 2002. (D.I.2-02-360.) Avis also joined in this motion. (D.I.1-02-364.) The court finds that Hertz and Avis have failed to demonstrate the necessary irreparable harm. Moreover, the court finds that a stay will be harmful to the debtor. Therefore, both of the motions to stay will be denied.

The briefly stated facts of this case are as follows: The debtor, ANC Rental Corp ("ANC"), is the parent company of the Alamo Rent-A-Car and National Car Rental System companies. As the name makes obvious, Alamo and National are car rental companies. Hertz and Avis are also engaged in the car rental business.

The rental car industry is particularly active in the nation's airports. According to the parties, the normal procedure for operating at an airport requires that the rental car company first bid for a contract with the local airport authority. If the bid is acceptable, the airport authority will issue a contract to the winning bidder that will permit it to operate a rental car booth, or concession, at the local airport. The parties assert that the terms of such concession contracts usually include terms stating that the concessionaire must earn a certain profit each year. This is called the minimum annual guarantee ("MAG"). Additionally, the appellants contend that the contracts generally prohibit the practice of two concessionaires operating at the same concession booth. This practice is commonly known as "dual branding." The parties do not dispute that the contracts at issue contain MAG requirements, but the debtor disputes that the contracts contain prohibitions on dual branding.[FN1]

FN1. To the extent that the debtor disputes this contention, for the purposes of this motion only, the court will accept that the contracts contain terms and conditions that prohibit dual branding.

ANC, National, and Alamo filed for Chapter 11 bankruptcy on November 13, 2001. As part of their reorganization plan, National and Alamo sought to reject the concession contracts and have ANC, as the debtor-in-possession, assume the contracts pursuant to § 365 of the bankruptcy code. The bankruptcy court permitted this rejection and assumption in each of its three orders. The appellants assert that the effect of the orders is to permit Alamo and National to operate at the same concession, which effectively permits the dual branding that the appellants contend is prohibited by the concession contracts. The appellees further argue that when the contracts with the airport authorities were renegotiated with ANC, the MAG was also effectively reduced because only one of the companies at the concession would be subject to the MAG requirement. The orders of the bankruptcy court currently affect concession contracts at eleven airports nationwide.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1058196 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

*2 Federal Rule of Bankruptcy Procedure 8005 permits a party to seek a stay pending appeal of an order of the bankruptcy court. *See* Fed. R. Bankr. P. 8005. The court may grant such a stay when the party seeking the stay can demonstrate that: (1) it has a likelihood of success on the merits of the appeal; (2) it will be subject to irreparable harm if the stay is not granted; (3) the granting of the stay will not substantially harm other interested parties; and (4) the granting of the stay would serve the public interest. *See* *In re Edwards*, 228 B.R. 573, 575 (Bankr.E.D.Pa.1999). If the movant fails to make a showing on any one of these four factors, the court may deny the stay. *See* *In re Blackwell*, 162 B.R. 117, 120 (E.D.Pa.1993).

Hertz and Avis both assert that they will suffer irreparable harm if the bankruptcy court's orders are not stayed and the debtor's reorganization plan is permitted to continue. The only argument the appellants present in support of this contention is that ANC, National, and Alamo will gain a "competitive advantage" if the reorganization scheme is permitted to continue because they will be able to operate at a lower cost than Hertz and Avis. The court is not persuaded by this argument. First, the amount of money the debtors will save during the consolidation process has been quantified. The fact that the savings can be quantified weighs against a finding of irreparable harm. *See* *In re Shelly's, Inc.*, 87 B.R.931, 935 (Bankr.S.D.Ohio 1988) (indicating that even where there might be some intangible loss to reputation, if injury is "at bottom, financial" and could be calculated, there was no irreparable injury).

Second, where a business is threatened with serious financial harm (i.e. going out of business) as a result of a competitor's actions, irreparable harm may be present. *See* *Sprint Corp. v. Deangelo*, 12 F.Supp.2d 1188, 1194 (D.Kan.1998) (collecting cases). However, where the sole injury is loss of a competitive advantage, the argument for irreparable harm is less compelling because "revenues and customers lost to competition which can be regained through competition are not irreparable." *Central & Southern Motor Freight Tariff Ass'n v. Household Goods Carrier's Bureau*, 757 F.2d 301, 309 (D.C.Cir.1985). In other words, the marketplace should eventually be able to correct any harm suffered by Hertz and Avis.

Third, although Hertz and Avis claim that they will be irreparably harmed in the absence of a stay, they have failed to adduce evidence of the putative injury on the record before the court. "To constitute irreparable harm, however, an injury cannot be speculative, it must be certain, great, and actual." *Sprint*, 12 F.Supp.2d at 1194 (citations and internal quotations omitted). Although the appellants have provided some evidence of the alleged advantage the ANC companies will receive, they have failed to make even a prima facie showing which demonstrates a tangible financial or other loss to Hertz or Avis. In the absence of such evidence, any loss to Hertz or Avis is merely speculative.

*3 Finally, the bankruptcy court orders thus far will only affect ANC operations at eleven airports nationwide. In contrast, there are eighty-seven international airports and over 700 other commercial airports in this country. FN2 Moreover, the majority of the eleven affected airports are relatively small. Given the small number of airports that are affected at this time versus the large number of airports in this nation, the court is not persuaded that allowing the ANC companies to consolidate operations threatens irreparable harm at present. Additionally, although there is a possibility that the plan may be implemented at many more airports, the court also notes that both the appellants and the appellees have access to markets outside of the nation's airports. For all of the above reasons, the court finds that the appellants have failed to demonstrate irreparable harm.

FN2. This information was obtained through telephone and electronic-mail communication with the Federal Aviation Administration ("FAA"). *See* E-mail from Ben Castalano, FAA, to Althea Brown, Judicial Administrator to the Honorable Gregory M. Sleet (May 21, 2002) (on file with chambers).

Turning to harm to other interested parties, it is clear that granting a stay would have a substantial and detrimental effect on the debtor's plan of reorganization. According to the debtors, once the plan is fully implemented, savings of $136,000,000 will be achieved. The appellants argue that any savings at present, prior to the national implementation of the plan, will only amount to $6,000,000. The court finds that even a savings of $6,000,000 is important to a bankrupt estate. Moreover, a one year delay in implementing the plan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1058196 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

might well seriously jeopardize the plan.FN3 Thus, the court concludes that the granting of the stay would produce substantial harm to other parties.

FN3. One year is the time the parties estimate for the appeal in the absence of a stay.

Since the appellants have failed to demonstrate irreparable harm or lack of substantial harm to other interested parties, the court will deny their motions for a stay of these proceedings. Therefore, none of the pending cases will be stayed on appeal.FN4

FN4. Although the motions to stay were only filed in case numbers 02-154, 02-360, and 02-364, it is clear that the motions are intended to affect all of the pending cases. Therefore, the denial of the stay means that none of the pending cases will be stayed. The parties should therefore not attempt, absent a showing of good cause, to file additional motions to stay in the remaining cases.

For the aforementioned reasons, IT IS HEREBY ORDERED THAT:

1. The appellants' Motion for a Stay Pending Appeal (D.I.18-02-154) is DENIED.
2. Hertz's Emergency Motion for a Stay Pending Appeal (D.I.1-02-360) is DENIED.
3. Avis' Emergency Motion for a Stay Pending Appeal (D.I.1-02-364) is DENIED.
4. None of the cases in this litigation [Case Nos. 02-154, 02-175, 02-288 through and including 02-299, 02-360, and 02-364] will be stayed pending this appeal.

D.Del.,2002.
In re ANC Rental Corp.
Not Reported in F.Supp.2d, 2002 WL 1058196 (D.Del.)

Briefs and Other Related Documents (Back to top)

- 1:02CV00364 (Docket) (May. 10, 2002)
- 1:02CV00360 (Docket) (May. 10, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB NO. 2

LEXSEE 1992 US DIST LEXIS 3253

**IN RE: THE COLUMBIA GAS SYSTEM, INC. and COLUMBIA GAS TRANSMISSION CORPORATION, Debtors. THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COLUMBIA GAS TRANSMISSION CORPORATION, Appellant, THE COLUMBIA GAS SYSTEM, INC. and COLUMBIA GAS TRANSMISSION CORPORATION, Appellees.**

**Civil Action No. 92-127-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1992 U.S. Dist. LEXIS 3253*

**March 10, 1992, Decided**

**PRIOR HISTORY:** [*1] Chapter 11, Case Nos. 91-803, 91-804

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The court considered the emergency motion of appellant creditors that sought a stay pending appeal to prevent appellee debtors from excluding certain refunds and prepetition surcharges from the bankruptcy estate.

**OVERVIEW:** The creditors filed an emergency motion for a stay pending appeal pursuant to *Fed. R. Bankr. P. 8005*. The creditors challenged the retention by the debtors of customer refund monies that the debtor held in trust for the customers. The court granted the creditors' emergency motion for stay pending appeal. The court held that the debtor was not required to place the funds into a trust account to protect the funds against any potential loss as a result of the creditors' appeal. The court held that requirements for such relief were: 1) the party was likely to prevail on the merits of its appeal, 2) the party would suffer irreparable injury absent a stay, 3) a stay would not cause substantial harm to other interest parties, and 4) a stay would not harm the public interest. The court determined that the creditors satisfied all of the requirements and were entitled to a stay pending appeal.

**OUTCOME:** The court granted the creditors' emergency motion for a stay pending appeal on the issue of whether the customer refunds and prepetition charges were part of the bankruptcy estate.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Appeals*
*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Cause*
*Bankruptcy Law > Practice & Proceedings > Appeals > General Overview*

[HN1] To be entitled to a stay pending appeal pursuant to *Fed. R. Bankr. P. 8005*, party must demonstrate that: 1) it is likely to prevail on the merits of its appeal; 2) it will suffer irreparable injury absent a stay; 3) a stay will not cause substantial harm to other interested parties, and 4) a stay will not harm the public interest.

**COUNSEL:** James L. Patton, Jr, Esquire, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, attorney for Debtors and for Appellees The Columbia Gas System, Inc. and Columbia Gas Transmission Corporation.

Kevin Gross, Esquire, of Rosenthal, Monhait & Gross, Wilmington, Delaware, attorney for Appellant The Official Committee of Unsecured Creditors for the Columbia Gas Transmission Corporation.

**JUDGES:** ROBINSON

**OPINIONBY:** SUE L. ROBINSON

**OPINION:**

**MEMORANDUM OPINION**

ROBINSON, U.S. District Judge

**INTRODUCTION**

Pending before the Court is the emergency motion of the Official Unsecured Creditors Committee of the Columbia Gas Transmission Corporation ("the Committee") for stay pending appeal ("the motion"). The Committee has filed an appeal of the February 13, 1992 order of the Bankruptcy Court approving, inter alia, payment of "category one refunds and prepetition GRI surcharges on a pro-rata basis . . . to the extent of $ 3.3 million." Said order is based upon the Bankruptcy Court's conclusion that the "category one refunds and prepetition GRI surcharges" are not property of the Debtor's bankruptcy estate, rather, that said refunds and surcharges when received [*2] are held by the Debtor "in trust" for the benefit of its customers.

The Committee bases its motion on two arguments. First, the Committee contends that, pursuant to Bankruptcy Rule 7062, which incorporates *Fed.R.Civ.P. 62(d)*, it is entitled to a stay as a matter of right so long as suitable means are implemented to protect non-appealing parties from any loss occasioned by a stay. In this case, the Committee argues that the Debtor's retention of customer refund monies in an interest bearing escrow account insures that neither the Debtor nor its customers will be harmed by a stay. Alternatively, the Committee argues that a stay is warranted pursuant to Bankruptcy Rule 8005 because the Committee has satisfied all the requirements for such discretionary relief.

Responses in opposition to the motion have been filed by Columbia Gas Transmission Corporation (the "Debtor"); West Ohio Gas Company, Virginia Natural Gas, Inc. and the Peoples Natural Gas Company; the Columbia Gas Distribution Companies; The Official Committee of Customers; and the Pennsylvania Public Utility Commission. For the reasons that follow, a stay will be granted pending an expedited appeal.

**DISCUSSION** [*3]

This Court has jurisdiction pursuant to *28 U.S.C. § 1334*(b). I conclude that the issues at bar are primarily legal in nature and, therefore, subject to de novo review. *In Re Public Service Co. of New Hampshire, 116 Bankr. 347, 349 n.2 (Bankr. D.N.H. 1990).*

With respect to the Committee's first argument for relief, I decline to hold that the Committee is entitled to a stay as a matter of right. The Committee has not posted a bond, as required by *Fed.R.Civ.P. 62(d)*. I find no support for the proposition that the Debtor, the prevailing party below, be required to place into escrow funds judicially determined to belong to its customers, in order to afford the Debtor and its customers protection against any loss as a result of the Committee's appeal.

The Committee submits that it is nevertheless [HN1] entitled to a stay pending appeal pursuant to Bankruptcy Rule 8005. In order to obtain a discretionary stay, the Committee must demonstrate that: 1) it is likely to prevail on the merits of its appeal; 2) it will suffer irreparable injury absent a stay; 3) a stay will not cause substantial harm to other interested parties; and 4) a stay will not harm the public interest. [*4] See, e.g., In the *Matter of Delaware & Hudson Rv. Co., 90 Bankr. 90, 91 (Bankr. D.Del. 1988).* The Court will examine each of these four factors seriatim.

**Probable Success on the Merits**

The Court concludes that the Committee has carried its burden of demonstrating the first factor, probable success on the merits. Probable success on the merits means that "the movant has a 'substantial case,' or a strong case on appeal." *In Re Public Service Co. of New Hampshire, 116 Bankr. at 349.* There is no dispute that the issues presented are novel and complex. I have concluded that the issues are entitled to de novo review. I, therefore, embrace the observations of the Court in *In Re Mader, 100 Bankr, 989, 991 (N.D.Ill. 1989),* as follows:

> This Court does not intend to go so far as to actually determine the merits of the legal issues which will be presented on appeal. Suffice it to say, however, that we have not found, nor been cited to, any controlling authority on this precise question, and the novel legal issue presented is not one in which the debtor has no likelihood of success. This case will [*5] likely present an issue of first impression and, on balance, the likelihood of success on the merits does not appear to weigh too heavily in favor of, or against, any of the parties to this proceeding.

See also *In Re Gleasman, 111 Bankr. 595, 601-02 (Bankr. W.D.Texas 1990).*

**Irreparable Harm**

The Court finds that the Committee has carried its burden as well as to the irreparable harm factor. It is apparent that, absent a stay, the funds subject to the Bankruptcy Court's February 13, 1992 order will be disbursed to the Debtor's customers. In dispute is the question whether there is a mechanism in place to recover such funds in the event the Bankruptcy Court's order is reversed. I decline to resolve that question on the record before me. Given the complexity of the question, however, I conclude that the irreparable injury factor weighs

more heavily in favor of granting the stay pending an expedited appeal.

**Harm to Other Parties**

The parties filing in opposition to this stay argue that a stay exposes the Debtor "to the unnecessary risk of diminution of the estate due to interest payments and substantial tax liability that could be easily [*6] avoided if [the Debtor] timely flows through the refunds." (D.I. 6 at 19) Accepting such representations as accurate, I nevertheless conclude that the interests of the Debtor and the bankruptcy estate can be accommodated by an expedited appeal.

**Public Interest**

Although the Court acknowledges that the refund of overcharges to individual customers represents a significant public interest, as does the public interest in enforcing the laws promulgated by Congress, I conclude that the public interest will not be adversely affected if the stay is granted pending an expedited appeal.

**CONCLUSION**

For the reasons stated, the Court will granted the Committee's emergency motion for stay pending appeal.

An appropriate order will be entered.

SUE L. ROBINSON

# TAB NO. 3



Not Reported in B.R.
Not Reported in B.R., 2001 WL 1820325 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

Page 1

**H**
Only the Westlaw citation is currently available.

United States Bankruptcy Court, D. Delaware.
TRANS WORLD AIRLINES, INC.
**No. 01-0056(PJW).**

March 27, 2001.

Gwendolyn Young Reams, James N. Finney, Gerald D. Letwin, Equal Employment Opportunity Commission, Washington, D.C., Counsel for Equal Employment Opportunity Commission.
Stuart Schiffer, Carl Schnee, Ellen W. Slights, United States Attorneys Office, Wilmington, J. Christopher Kohn, Tracy J. Whitaker, Ruth A. Harvey, Margaret Newell, Lacey R. Harwell, Jr., United States Attorneys Office, Washington, D.C. Counsel for United States of America.
Laura Davis Jones, Bruce Grohsgal, Pachulski, Stang, Ziehl, Young & Jones, Wilmington, Alexander Dimitrief, P.C., James H.M. Sprayregen, Kirkland & Ellis, Chicago, IL, Counsel for the Debtors Trans World Airlines, Inc.
Mark D. Collins, Michael Merchant, Richards, Layton & Finger, Wilmington, Alan B. Miller, Richard A. Rothman, Greg A. Danilow, Weil, Gotshal & Manges LLP, New York, NY, Counsel for AMR Corp., AMR Finance, Inc. and American Airlines, Inc.
WALSH, Bankruptcy J.
*1 Dear Counsel:

This is my ruling on the Emergency Motion of the United States of America and Equal Employment Opportunity Commission for Stay Pending Appeal (Doc. # 971) and brief in support (Doc. # 972) ("Stay Brief") of the Court's March 12, 2001 order granting the motion of Transworld Airlines, Inc. ("TWA" or "Debtor") for sale of substantially all of its assets to AMR Corporation ("American"). The Debtor and American have filed a joint response (Doc. # 1024)("Response"). For the reasons set forth below, I will deny the stay motion.

TWA filed its chapter 11 case on January 10, 2001. This is TWA's third chapter 11 filing in ten years. Before filing, TWA and American entered into an asset purchase agreement under which TWA agreed to sell substantially all of its assets to American. On January 10, 2001, TWA filed a § 363 [FN1] motion for an order authorizing the sale of substantially all of its assets ("Sale Motion") to American outside the ordinary course of business and prior to filing a plan of reorganization. Even without the asset purchase agreement with American, TWA intended to file its bankruptcy petition in early January, 2001. Transcript [FN2] (vol.I) at 380.

FN1. Unless otherwise indicated, all references to " § ____" are to a section of the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*

FN2. "Transcript" refers to the transcripts of the March 9, 10 and 12, 2001 hearings.

On March 9, 10 and 12, 2001, I held an evidentiary hearing on the Sale Motion ("Sale Hearing")and a related contract rejection motion. The Equal Employment Opportunity Commission and United States (together the "EEOC") objected to the sale to the extent it permitted TWA to transfer its assets "free and clear" of the EEOC claims.

The EEOC asserts two categories of what it characterizes as "successor liability" claims: (1) those arising from a settlement ("Settlement Agreement") of an EEOC lawsuit and a private class action against TWA based on alleged sexual discrimination; and (2) those based on pending prepetition charges filed with the EEOC against TWA.[FN3] (For convenience of reference I will use the EEOC label of "successor liability" claims). The Settlement Agreement requires TWA to provide ten travel vouchers for covered individuals and provides that the class member or his or her family member may use the vouchers for his or her lifetime ("Travel Voucher Program"). Stay Brief at p. 3. TWA has issued trip vouchers since the program was initiated in the latter half of 1995. *Id.*

FN3. According to the EEOC, as of March 2, 2001, there were 29 charges of employment discrimination against TWA alleging various violations of federal employment discrimination statutes, including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, and the Age Discrimination in Employment Act of 1967. Stay Brief at pp. 3-4.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in B.R.
Not Reported in B.R., 2001 WL 1820325 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

Page 2

After considering closing arguments on March 12, 2001, I overruled the EEOC's objection based on successor liability and entered an order (Doc. # 887)("Sale Order") authorizing the Sale Motion pursuant to §§ 363(f), 105(a) and 106(a).

Section § 363(f) permits a debtor-in-possession to sell property of the estate outside the ordinary course of business

...free and clear of any interest in such property of an entity other than the estate, only if-

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

*2 (4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Section 105(a) provides thatThe court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The Sale Order states in relevant part:The sale of the Transferred Assets to Purchaser shall be free and clear of Liens and other claims (other than Liens created by Purchaser) pursuant to section 363(f) of the Bankruptcy Code whatsoever known or unknown including, but not limited to, Liens and claims of any of the Sellers' ... employees ... and Purchaser shall not be liable in any way (as a successor to the Debtors or otherwise) for any claims that any of the foregoing or any third party may have against any of the Sellers; provided that, with regard to employees' claims, the free and clear delivery of the Assets shall include, but not be limited to, all asserted or unasserted, known or unknown, employment related claims ... and successorship liability accrued up to the date of closing of such sale.

Sale Order at p. 6, ¶ 4.

The Sale Order also contains the following injunctive provision:Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, all Persons are enjoined from taking any action against Purchaser or Purchaser's Affiliates including, without limitation, TWA Airlines LLC, to recover any claim which such Person had solely against Sellers or Sellers' Affiliates.

Sale Order at p. 8, ¶ 11.

On March 12, 2001 the EEOC filed a notice of appeal of the Sale Order (Doc. # 890) and on March 15, 2001, it filed the present motion requesting a stay pending appeal. Bankruptcy Rule 8005 governs the issue and provides in relevant part:

[n]otwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.FN4

FN4. Fed.R.Bank.P. 7062 incorporates Rule 62 of the Federal Rules of Civil Procedure and lists several specific matters in which the court may issue a stay pending appeal.

The granting of a motion for stay pending appeal is discretionary with the court. The movant must show that: (1) it will likely succeed on the merits of the appeal; (2) it will suffer irreparable injury if the stay is not granted; (3) a stay would not substantially harm other parties in the litigation; and (4) a stay is in the public interest. *Family Kingdom, Inc. v. EMIF New Jersey Ltd P'Ship (In re family Kingdom, Inc.)*, 225 B.R. 65, 69 (D.N.J.1998); *In re Roth American, Inc.*, 90 B.R. 94, 95 (Bankr.M.D.Pa.1988). No factor alone is outcome determinative. *In re Roth*, 90 B.R. at 95. Proper judgment under Rule 8005 "entails a 'delicate balancing of all elements." ' *In re Roth*, 90 B.R. at 95 *quoting In re Hotel Assocs., Inc.*, 7 B.R. 130, 132 (Bankr.E.D.Pa.1980).

*3 I find that a balance of the Rule 8005 factors does not favor issuing a stay pending appeal and accordingly, I will deny the stay motion. I review each of the Rule 8005 ele-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in B.R.
Not Reported in B.R., 2001 WL 1820325 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

Page 3

ments in turn.

I. Likelihood of Success on the Merits.

The EEOC argues it will likely prevail on appeal because neither § 363(f) nor § 105(a) permits the sale by TWA to American of substantially all of TWA's assets free and clear of the EEOC successor liability claims. It also raises the doctrine of sovereign immunity as a bar to the enforceability of the Sale Order. Finally, the EEOC argues that the Sale Order is procedurally defective in that it impermissibly imposes injunctive relief outside the confines of an adversary proceeding.

I am not persuaded by these arguments. I previously concluded, and I reaffirm, that "under § 363(f), [TWA's] assets can be transferred free and clear of [successor liability] claims .... And I find no basis in the statute for requiring that the purchaser assume those liabilities." Transcript (vol.III) at p. 816.

Section 363(f) authorizes sales free and clear of interests in the property being sold. 11 U.S.C. § 363(f); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr.N.D.Ohio 1987) *citing* H.REP. NO. 595, 95TH CONG., 1ST SESS. 345 (1977), U.S.C.C.A.N.1978, P. 5787. Even before the enactment of the Bankruptcy Code in 1978, a court sitting in bankruptcy had the authority to authorize the sale of estate assets free and clear based on its general equitable powers and its duty to distribute the debtor's assets and determine controversies relating thereto. *White Motor Credit*, 75 B.R. at 948 *citing Van Huffel v. Harkelrode*, 284 U.S. 225, 52 S.Ct. 115 (1931). In other words, bankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of § 363(f). *Id.*

The authority to sell free and clear is broad. It reflects a compelling policy to encourage bankruptcy sales subject only to claims of a specific and recognized nature in the subject property. *E.g., Rubinstein v. Alaska Pac. Consortium (In re New England Fish Co.)*, 19 B.R. 323, 329 (Bankr.W.D.Wash.1982).

In this regard, I find the facts and reasoning of *New England Fish Co.* persuasive. In that case, the debtor, a major fish processing company with extensive facilities in Alaska, faced a management and financial crisis which forced it to cease operations. *New England Fish Co.*, 19 B.R. at 325. It filed a chapter 11 petition which converted to a chapter 7 liquidation less than a month later. *Id.* The trustee for the debtor's estate entered into an asset purchase agreement with a buyer under which the trustee agreed to sell the debtor's assets. *Id.* With a new fishing season rapidly approaching, the Governor for the State of Alaska testified that operation of the debtor's facilities for the season was critical for the economy and that a sale of the debtor's assets was urgent. *Id.*

*4 Prior to filing bankruptcy, the debtor was subject to two class action civil rights suits brought by its employees. *New England Fish Co.*, 19 B.R. at 324. In one suit, the district court found that the debtor had discriminated based on race in the allocation of jobs and in housing its employees. *Id.* The asset purchase agreement obligated the trustee to sell the debtor's assets free and clear of the $15,156,371 civil rights claims. *New England Fish Co.*, 19 B.R. at 325.

The claimants objected to the sale based on the successor liability of the buyer, claiming that the court could not authorize the sale of the debtor's assets free and clear of their civil rights claims. The claimants contended they were entitled to go to trial on the merits of a successor liability theory based on the buyer's substantial continuity of the debtor's business enterprise and continuity in the identity of the work force. *Id.* at 324.

In overruling these objections to the sale, the *New England Fish Co.* court reasoned as follows:

The trustee ... concluded that the operation of the business was not practical. He sold it to Ocean Beauty. The latter would not and will not take the business burdened with civil rights litigation. No purchaser would. Such a prospect would chill or render impossible any sale. Those who would suffer from the uncertainty and delay would be creditors, including the ... claimants themselves....

The apprehension that bankruptcy will become a convenient expedient for avoiding the successorship doctrine is not well founded. The adverse consequences of bankruptcies involving displacement of management, creditor control and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in B.R.
Not Reported in B.R., 2001 WL 1820325 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

Page 4

liquidation hardly support the argument that employers will use bankruptcy to avoid their responsibilities under the civil rights acts.

Congress has stated relative priorities for various elements of the debtor's creditor constituency in the Code. It is contended there are now two court-created exceptions: NLRA and Title VII claimants. Assuming this is so, if both were present, which of these would be prior to the other? Where is this to end? It is only a question of time before such a priority could and would be extended to other aggregations of claimants. To allow exceptions to be created by extrapolation from one case to another would eventually subvert the specific priorities which define Congressional policy for bankruptcy distribution to creditors.

We conclude that the assets of the [debtor's] estate being transferred pursuant to the Purchase Agreement may be transferred free and clear of the claims of the [civil rights claimants] ...

*New England Fish Co.,* 19 B.R. at 328-29 (citations omitted).

I find this reasoning and outcome *a propos.* As in *New England Fish Co.,* many factors weigh in favor of granting the injunction against the EEOC successor liability claims. TWA filed a good faith bankruptcy petition. Pursuant to a court approved bidding procedure, TWA determined that American's offer is the highest and best, and in fact, the only available offer for the purchase of substantially all of TWA's assets. TWA is unable to consummate the sale if the EEOC's claims are not extinguished. No other prospective purchaser exists. If the sale does not go forward, it is highly likely that TWA will be liquidated with the resultant material harm to various creditor constituencies, including its 20,000 employees and a likely significant adverse economic impact on the St. Louis, Missouri region, the location of TWA's hub airport.

*5 Authorizing the sale of TWA to American free and clear of the EEOC's successor liability claims achieves the purpose of § 363 intended by Congress. "[T]he purpose behind the 'free-and-clear' language is to maximize the value of the asset, and thus enhance the payout made to creditors. Without the 'free-and-clear' language, prospective buyers would be unwilling to pay a fair price for the property subject to sale; instead, the price would have to be discounted, perhaps quite substantially, to account for the liabilities that the buyer would face simply as a result of acquiring the asset." *WBO P'ship v. Virginia Dep't of Med. Assistance Serv. (In re WBO P'ship),* 189 B.R. 97, 108 (Bankr.E.D.Va.1995).

I also agree with TWA and American that (1) the prospect of successor liability would deter bidders and could create a serious impediment to the ability of debtors to effect going-concern sales under § 363, *see, e.g., In re Leckie Smokeless Coal Co.,* 99 F.3d 573, 586-87 (4th Cir.1996); *In re WBO P'ship,* 189 B.R. at 108-09; *New England Fish Co.,* 19 B.R. at 329; and that (2) bidders faced with prospective successor liability claims would lower their offered purchase price thereby indirectly subverting the priority scheme of the Bankruptcy Code. *See, e.g., White Motor Credit,* 75 B.R. at 951; *New England Fish Co.,* 19 B.R. at 328.

The EEOC argues that the "Settlement Agreement prohibits TWA from reducing or limiting the benefits provided by the Travel Voucher Program. *Id.,* Section VII, ¶ A.3, at 8. As such TWA may not dispose of its assets, by sale or otherwise, without making appropriate arrangements for continuation of the voucher program." Stay Brief at p. 3. I find this statement a classic non sequitur.

The EEOC's conclusion would clearly not pertain in a TWA liquidation scenario. TWA leases 97% of its fleet of approximately 180 airplanes. Transcript (vol.I) at 21. Absent the American transaction it is highly likely that TWA will not be able to satisfy its aircraft lease obligations on an ongoing basis. Pursuant to § 1110 the lessors will simply repossess their planes. In that situation, how can TWA make "appropriate arrangements" as the EEOC suggests TWA is required to do? TWA will have no planes and accordingly, no ability to continue the Travel Voucher Program.

For similar reasons, I also reject the EEOC's argument that the Travel Voucher Program and the EEOC charges cannot be reduced to a monetary satisfaction. Stay Brief at p. 11. The EEOC characterizes the Travel Voucher Program as injunctive relief for which it cannot be required to accept a monetary settlement. From this it concludes that the claims are not subject to § 363(f)(5) and that the sale to TWA therefore cannot be free and clear of the EEOC successor li-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in B.R.
Not Reported in B.R., 2001 WL 1820325 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

Page 5

ability claims. The EEOC fails to recognize, however, that if TWA were to liquidate, the "injunctive" award made to the flight attendants in the form of travel vouchers would be converted to a dollar claim and it would be treated like any other unsecured claim in this bankruptcy case. In fact, it appears the Settlement Agreement itself establishes a method for valuing the travel vouchers. Thus, I find no basis in the statute for requiring the purchaser to assume these liabilities.

*6 The EEOC next argues that its successor liability claims are not "interests in property" within the meaning of § 363(f). I disagree. TWA and American cite extensive case law which undermines the cases on which the EEOC relies. The EEOC does not attempt to refute this contrary precedent. *Compare* Stay Brief *citing Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159 (7th Cir.1994); *Schwinn Cycling & Fitness, Inc. v. Benonis (In re Schwinn Bicycle, Co.),* 210 B.R. 747 (Bankr.N.D.Ill.1997) *aff'd* 217 B.R. 790 (N.D.Ill.1997) *with* Response *citing Leckie Smokeless,* 99 F.3d a 582, 585 (section 363(f) authorizes bankruptcy court to extinguish statutory successor liability for employee benefit claims); *P.K.R. Convalescent Ctr. v. Virginia Dep't of Med. Assistance Serv. (In re P.K.R. Convalescent Ctrs., Inc.),* 189 B.R. 90, 96 (Bankr.E.D.Va.1995)(section 363(f) prevents state's statutory tax interest on property from passing to purchaser); *In re WBQ P'ship,* 189 B.R. at 107 (same); *White Motor Credit,* 75 B.R. at 949 (section 363 sale was free and clear of prepetition tort claim against asset purchaser); *Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.),* 56 B.R. 186, 190-91 (Bankr.N.D.Ga.1986)(same).

I note that the leading cases which the EEOC cites in support of successor liability are from the Seventh Circuit. *E.g., Zerand-Bernal Group,* 23 F.3d at 163 (bankruptcy court lacks authority to enjoin all possible future lawsuits against a buyer at a bankruptcy sale); *Schwinn Bicycle,* 210 B.R. at 755. As such they are not controlling precedent for this court. Equally important, these cases are factually distinguishable because they involve product liability claims against the debtors' alleged successor-in-interest that arose after the sale transaction or plan confirmation. Thus, these cases hold that a sale free and clear of claims cannot divest a product liability suit that arises after a sale of assets or plan confirmation, not that § 363(f) does not authorize a sale free and clear of successor liability based on prepetition claims against the debtor.

I also am not persuaded by the EEOC's attempt to distinguish the precedent cited by TWA. For example, the EEOC alleges that *Forde v. Kee-Lox Mfg. Co.,* 437 F.Supp. 631 (W.D.N.Y.1977) is no longer good law because it was decided under the Bankruptcy Act which did not have a provision authorizing asset sales free and clear of interests in property. Stay Brief at p. 12. As noted *supra,* it has long been established that bankruptcy courts have the equitable authority to authorize the sale of estate assets free and clear of interests even without § 363. The fact that *Forde* was decided under the Act therefore does not compromise its reasoning. And as TWA and American point out, *Forde* continues to be cited as good law by courts interpreting the Bankruptcy Code. *E.g., Ninth Ave. Remedial Group v. Allis-Chalmers Corp.,* 195 B.R. 716, 731 (N.D.Ind.1996); *All American,* 56 B.R. at 189.

*7 I disagree with the EEOC that *New England Fish Co.* "defies" *Folger Adam Security, Inc. v. DeMatteis/MacGregor, J.V.,* 209 F.3d 252 (3d Cir.2000). Stay Brief at p. 12. As noted above, I find the facts and analysis in *New England Fish Co.* highly relevant to the situation here. Furthermore, the EEOC's conclusion that *Folger Adam* makes a "pronouncement that general unsecured claims not arising from the ownership of property are not within section 363(f)'s ambit" is incorrect. Stay Brief at p. 12.

In *Folger Adam,* the Court of Appeals for the Third Circuit had to "decide whether the affirmative defenses of setoff, recoupment, and other contract defenses, which arose as a consequence of alleged defaults under certain contracts with the debtors, constitute an 'interest' under section 363(f) of the Bankruptcy Code such that a sale of the debtors' assets in a consolidated Bankruptcy Court auction free and clear, extinguished such affirmative defenses and effectively transformed such contract rights into unimpeachable accounts receivable in the hands of the purchaser." 209 F.3d at 253-54. The Third Circuit concluded that "affirmative defenses do not constitute an 'interest' for purposes of section 363(f) and, therefore, were not extinguished by the Bankruptcy sale." *Id.* at 254. The Court did not, however, other-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

wise define the scope of an "interest" for purposes of § 363(f).

In reaching its conclusion, the Court noted that "any interest" is not defined anywhere in the Bankruptcy Code. *Folger Adam*, 209 F.3d at 257. After reviewing existing case law, the Third Circuit concluded that right of recoupment is a defense and not an interest and is thus not extinguished by a § 363(f) sale. *Id.* at 261. The Court, however, did not otherwise define or surmise what comprises an 'interest' under § 363(f).

Likewise, the Court of Appeals for the Fourth Circuit in *Leckie Smokeless* also refused to provide a full definition of interest, a case which the EEOC incorrectly cites for the proposition that the term "interests in property" is interchangeable with "lien" and that both mean a "charge against or interest in property to secure payment of a debt or performance of an obligation." Stay Brief at p. 7.

In *Leckie Smokeless,* two employer-sponsored benefit plans objected to the extinguishment of their right to payment of plan liabilities from a successor-in-interest by operation of § 363(f). In determining whether the plans had "any interest in property" within the meaning of § 363(f) the Fourth Circuit rejected what it called the District Court's "unduly broad interpretation" of the phrase. The District Court had found that simply the right to demand money from the debtor gave rise to an "interest" in the debtor's property under § 363(f). *Leckie Smokeless*, 99 F.3d at 581.

Rejecting this definition, the Fourth Circuit noted that

...while the plain meaning of the phrase "interest in such property" suggests that not all general rights to payment are encompassed by the statute, Congress did not expressly indicate that, by employing such language, it intended to limit the scope of section 363(f) to *in rem* interests, strictly defined, and we decline to adopt such a restricted reading of the statute here.

*8 *Leckie Smokeless,* 99 F.2d at 582.

The EEOC maintains that § 105(a) does not support the sale "free and clear" of its successor liability claims. A predicate of this argument is that § 363(f) does not authorize the requested relief. However, because my order authorizing the sale of TWA to American is based on the "free and clear" language of § 363(f) as discussed above, the injunctive relief in the Sale Order is appropriate under § 105(a) because it is necessary to carry out the effect and purpose of § 363(f). 11 U.S.C. § 105(a). It therefore follows that I am not using § 105(a) to create substantive rights or to contravene the Bankruptcy Code as the EEOC suggests.

The EEOC raises two additional arguments in support of its stay request. First, it invokes the doctrine of sovereign immunity because "[i]n this matter, the effect of the Sale Order is tantamount to a suit by American against the United States and EEOC for a declaratory judgment that it has no successor liability as a result of its purchase of substantially all of TWA's assets." Stay Brief at 14. This argument mischaracterizes the facts. TWA is the debtor and moving party. The Sale Order is pursuant to TWA's motion for authority to sell substantially all of its assets in TWA's chapter 11 bankruptcy. I fail to see how the Sale Order can be characterized as a declaratory judgment by American against the EEOC. It clearly is not a suit against the EEOC. Accordingly, I conclude that the Sale Order does not implicate the sovereignty of the EEOC as a government entity.

Furthermore, § 106(a) expressly abrogates the EEOC's sovereign immunity under § 363 to the extent the EEOC could invoke the doctrine against TWA. The EEOC is a federal entity charged with enforcing federal statutes. "Congress has given no indication that bankruptcy courts cannot order property sold free and clear of interests that Congress has itself created by statute." *Leckie Smokeless*, 99 F.3d at 586.

Although the cases the EEOC cites in support of sovereign immunity do establish that a waiver of sovereign immunity generally must be clear and is narrowly construed, the cases are otherwise inapposite. None of the cases concern a sale under § 363(f), and indeed most do not involve a bankruptcy proceeding. *See* Stay Brief at 14 citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 483, 114 S.Ct. 996, 1003 (1994)(sue-and-be-sued clause of FDIC's statutory predecessor waived FDIC's sovereign immunity from suit by discharged employee of failed savings and loan association); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 38, 112 S.Ct. 1011, 1017 (1992)(§ 106(c) does not waive the sovereign immunity of the United States from chapter 7 trustee's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in B.R.
Not Reported in B.R., 2001 WL 1820325 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

Page 7

action seeking monetary recovery) *superseded by statute as stated in, e.g., Field v. Montgomery County* (*In re Anton Motors, Inc.*), 177 B.R. 58, 62 (Bankr.D.Md.1995)(in § 106(a) Congress has stated unequivocally its intention to abrogate sovereign immunity from bankruptcy causes of action for both the United States and the states, as to both nonmonetary and monetary judgments, except punitive damages); *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948 (1976)(nonbankruptcy suit for reclassification of federal civil service positions and for back pay involving issues regarding jurisdiction of Court of Claims and relief available in that tribunal) *criticized by United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961 (1983).

***9** Second, the EEOC argues that the Sale Order may not impose injunctive relief outside the scope of an adversary proceeding. I disagree. An adversary proceeding is not required for an order under § 363(f), even if the order includes injunctive relief necessary to effectuate the sale "free and clear." If what the EEOC argues were true, all § 363(f) sales would have to proceed via an adversary proceeding-a procedure finding no support in the Bankruptcy Code or twenty plus years of reported decisions interpreting that Code.

Section 363(f) does not contain any "notice and hearing" requirement beyond that set forth in § 363(b). Thus, courts have held that "[t]he Code contemplates that hearings will be held on sales of estate property, including sales of property free and clear of liens; 'only when there is an objection.' " *In re Stogsdill*, 102 B.R. 587, 589 (Bankr.W.D.Tex.1989) *quoting* H.R.REP. NO. 595, 95TH CONG., 1ST SESS. 315 (1977) U.S.C.C.A.N.1978, PP. 5787, 6272. This does not relieve the debtor-in-possession from complying with due process to interest holders. Nor may the court execute an order approving the allocation or distribution of sale proceeds in the absence an adversary proceeding. Fed.R.Bank.P. 7001(2); *e.g.*, *In re Collins*, 180 B.R. 447, 449 (Bankr.E.D.Va.1995)(propriety and validity of liens on property were not properly before the court on a motion to sell free and clear).

Current Fed.R.Bank.P. 7001 does not include a provision requiring an adversary proceeding to sell property of the estate free and clear of liens. *See In re J.B. Winchells, Inc.*, 106 B.R. 384, 394 (Bankr.E.D.Pa.1989) *discussing* former Bankr.R. 701(3), which required an adversary proceeding to "sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction." Fed.R.Bankr.P. 7001(3) includes as an adversary proceeding a request for approval of a sale under § 363(h), but no longer includes approval of a sale free and clear under § 363(f).

The cases on which the EEOC relies are not to the contrary. These cases involve proceedings specified in Fed.R.Bank.P. 7001, not § 363(f) sales. *See* Stay Brief at p. 16 *citing Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 763 (5th Cir.1995)(injunctive relief issued as component of settlement agreement between the debtor, three of its former directors and their D & O liability insurer required adversary proceeding); *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 437 (5th Cir.1994)(noting that claim seeking equitable interest in property such as constructive trust required an adversary proceeding because it is proceeding to recover money or property or determine interest in property); *Lyons v. Lyons (In re Lyons)*, 995 F.2d 923, 924 (9th Cir.1993)(sale under § 363(h) required adversary proceeding); *In re McKay*, 732 F.2d 44, 45, 48 (3d Cir.1984)(holding that chapter 13 debtor was required to initiate adversary proceeding for lien avoidance action under § 522(f)). Not surprisingly, these cases confirm that an adversary proceeding is required for those actions listed in Fed.R.Bank.P. 7001. But a "free and clear" sale under § 363(f) is simply not such an action.

***10** In sum, for the reasons discussed above, I conclude that the EEOC is not likely to succeed on the merits of its appeal.

II. Irreparable Injury to EEOC.

The EEOC argues it faces irreparable injury because § 363(m) threatens the loss of its appellate rights if the American transaction is consummated. Stay Brief at pp. 17-18. It maintains that "[t]his prospect itself suffices to meet the standard of irreparable harm." *Id.* at p. 17.

The EEOC does not provide any basis for concluding that § 363(m) will render its appeal moot. Although the EEOC is appealing the Sale Order *in toto*, its objection is based on an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in B.R.                                                                                      Page 8
Not Reported in B.R., 2001 WL 1820325 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

isolated provision of the Sale Order that authorizes the sale free and clear of the EEOC's successor liability claims. If the EEOC is successful on appeal, presumably it may then proceed against American on the merits of its claim.

Even if § 363(m) adversely impacts the EEOC's objection, "[i]t is well settled that an appeal being rendered moot does not itself constitute irreparable harm." *In re 203 North LaSalle Street P'ship, 190 B.R. 595, 598 (N.D.Ill.1995); see also Virginia Dep't of Med. Assist. Svs. v. Shenandoah Realty Partners, LLP (In re Shenandoah Realty Partners), 248 B.R. 505, 510 (W.D.Va.2000); In re Kent, 145 B.R. 843, 844 (Bankr.E.D.Va.1991); In re Charter Co., 72 B.R. 70, 72 (Bankr.M.D.Fla.1987).*

More fundamentally, however, the EEOC fails to establish irreparable injury for the simple reason that the EEOC may have no recoverable claims against TWA in the absence of a sale of substantially all of TWA's assets to American. In the likely event that a stay pending appeal aborts the American transaction, the EEOC will be relegated to holding an unsecured claim in what will very likely be a piece-meal liquidation of TWA. In that context, such claims are likely to have little if any value. Issuing a stay pending appeal therefore cannot be said to result in any greater recovery for the EEOC or its constituencies. Consequently, there is no irreparable injury to the EEOC in the absence of a stay.

### III. Substantial Harm to TWA and Other Litigants.

The EEOC argues that a stay will not substantially harm either TWA or American. The EEOC claims there is no substantial harm because (1) enforcing the Travel Voucher Program is not a burden on American as successor to TWA because travelers under the program would only use seats that would otherwise be empty; and (2) the value of the EEOC's successor liability claims is not material relative to the value of the entire sale transaction. Stay Brief at p. 19.

The EEOC's argument misses the point. The substantial harm to other litigants inquiry focuses on the harm caused by issuing a stay of the Sale Order pending appeal, not on the harm caused by preserving or enforcing the EEOC's successor liability claims against American. The evidence is overwhelming that TWA cannot be sustained as a viable

business enterprise in the face of a material delay in closing the American transaction.

\*11 Specifically, the uncontroverted testimony at the Sale Hearing was that TWA has a cash burn rate of $ 3,000,000 per day. If the sale to American is unduly delayed there is a very serious risk of losing a sale transaction which materially benefits substantial and diverse creditor constituencies. At the conclusion of the Sale Hearing, I found that there would be an immediate and precipitous decline in the financial affairs of TWA followed by a very high probability, if not certainty, of liquidation if I were to deny or reject the Sale Motion. Transcript (vol.III) at 810. A stay of the Sale Order poses the same threat.

### IV. The Public Interest.

The EEOC argues that I should stay the Sale Order because it is contrary to the strong public interest in the enforcement of the federal statutes prohibiting discrimination in the workplace. Recognizing the compelling objectives of saving financially troubled businesses under the Bankruptcy Code, the EEOC nevertheless maintains that these salutary objectives do not justify the suspension of usual rules of fair employment practices. Stay Brief at p. 20.

I am somewhat puzzled by the EEOC's position in this regard. The testimony at the Sale Hearing established that if the sale of TWA's assets to American does not go forward, TWA will likely liquidate. Given TWA's financial condition, a liquidation would result in severe harm to all TWA's past and current employees because they would lose their jobs and retirement benefits.

Although I concur with the EEOC that there is a strong public interest in the enforcement of federal statutes prohibiting discrimination in the workplace, I do not agree that the public interest favors jeopardizing the job security of 20,000 TWA employees, including those EEOC claimants still employed at TWA, at the expense of preserving successor liability claims which will be rendered unenforceable absent a sale of substantially all of TWA's assets as a going concern. Stay Brief at 19.

Finally, I disagree that the Sale Order prevents the EEOC

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

from enforcing federal statutes prohibiting discrimination in the workplace. It is TWA's failure as a viable standalone airline that prevents the EEOC from enforcing claims against TWA. The Sale Order is simply not the cause of any "suspension of usual rules of fair employment practice" at TWA, as the EEOC alleges. Stay Brief at 20. There is absolutely no evidence to suggest that TWA is availing itself of the provisions of the Bankruptcy Code to circumvent fair employment statutes. The simple fact is that TWA is a failing enterprise whose likely end, in my opinion, will either be a partial survival as a part of American or a liquidation resulting in no enterprise value and a consequent material loss to all non-priority general unsecured creditor classes.

CONCLUSION

The EEOC has not advanced any law or facts which I have not already considered. For the reasons set forth above, I deny the EEOC's motion for stay pending appeal.

***12** SO ORDERED.

Bkrtcy.D.Del.,2001.
In Re Trans World Airlines, Inc.
Not Reported in B.R., 2001 WL 1820325 (Bkrtcy.D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB NO. 4

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 253477 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**H**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

In re: POLAROID CORPORATION, et al., Debtors.

Stephen J. MORGAN, Appellant,

v.

POLAROID CORPORATION, et al., Appellees.

**No. Civ.A. 02-1353 JJF, 01-10864 PJW.**

Feb. 9, 2004.

Stephen J. Morgan, Appellant, pro se.

Gregg M. Galardi, Mark L. Desgrosseilliers, of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, Eric W. Kaup, of Skadden, Arps, Slate, Meagher & Flom LLP, Chicago, Illinois, for Debtors and Debtors-in-Possession, Appellees, of counsel.

Joseph Malfitano, of Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, Nava Hazan, of Akin Gump Strauss Hauer & Feld, LLP, New York, New York, Co-Counsel to the Plan Administrator, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan. (D.I.31.) For the reasons discussed below, the Court will deny Appellant's request for a stay pending appeal.

BACKGROUND

The instant action is a bankruptcy appeal arising from the voluntary bankruptcy filing by Polaroid Corporation and certain of its subsidiaries and affiliates (collectively the "Debtors") in October of 2001. By his Motion, the Appellant requests the Court to stay the implementation of the Debtors' plan for reorganization. The Bankruptcy Court denied an identical request for a stay by Appellant on December 16, 2003.

I. Parties' Contentions

The Appellant contends that the Court should stay the implementation of the reorganization plan because it is not in the best interest of Polaroid shareholders. The Appellant alleges that the auction of Polaroid's assets was fraudulent and that the value of Polaroid's assets far exceeded their sale price. Further, the Appellant contends that his appeal is likely to be successful because there remain unanswered questions about value and damaged shareholder and bondholder interests. The Appellant contends that if the Court denies his request for stay, he and other shareholders will be deprived of their right to appeal and their financial stakes in Polaroid. The Appellant also contends that a stay is in the public interest, because in light of recent corporate scandals, a resolution of the instant appeal is required.

In response, the Appellee contends that the Court should deny Appellant's request for an emergency stay because he has not satisfied the standards for entitlement to a stay pending appeal. Further, the Appellee contends that the Appellant's request is equitably moot. The Appellee also contends that Appellant failed to properly serve it and its counsel as required by the Federal Rules of Civil Procedure.

DISCUSSION

Federal Bankruptcy Rule 8005 enables a reviewing court to issue a stay pending appeal from a judgment, order, or decree of a bankruptcy judge. Courts interpreting Federal Bankruptcy Rule 8005 have established a four prong test for an appellant to obtain a stay: 1) a strong likelihood of success on the merits of the appeal; 2) the movant will suffer irreparable harm if the stay is denied; 3) substantial harm will not be suffered to non-moving parties if the stay is granted; and 4) issuance of the stay will not harm the public interest. *In re 421 Willow Corp.*, 2003 WL 22318022 at *3 (E.D.Pa. Oct. 9, 2003). If a party fails to establish one of the four prongs, a court may deny the requested stay. *In re ANC Rental Corp.*, 2002 WL 1058196 at *2 (D.Del. May 22, 2002) (citing *In re Blackwell*, 162 B.R. 117, 120 (E.D.Pa.1993)). Because the Court concludes that Appellant has not established a likelihood of success on the merits, the Court will deny the request for stay pending appeal.

Likelihood of success on the merits means that a movant has a " 'substantial case,' or a strong case on appeal." *In re The Columbia Gas Sys., Inc.*, 1992 U.S. Dist. LEXIS 3253 at *4 (D.Del. March 10, 1992) (quoting *In re Public Serv. Co. of*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 253477 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

*N.H.*, 116 BR 347, 349 (Bankr.D.N.H.1990). Appellant contends that "unanswered questions about value ... once answered will favor the appeal." (D.I. 31 at 3.) However, in the instant motion the Appellant does not identify for the Court any order, decree, or judgment by the Bankruptcy Court that was erroneous, and thus, potentially reversible on appeal. Moreover, Appellant has not identified any potentially incorrect factual finding or legal conclusion reached by the Bankruptcy Court.

***2** Absent specific challenges to actions taken by the Bankruptcy Court, the Court must conclude that Appellant has not demonstrated a strong likelihood of success on the merits. The Court will not speculate as to what errors, if any, were committed by the Bankruptcy Court. Therefore, because the Court concludes that Appellant has failed to establish the first prong of the test for entitlement to a stay, the Court will deny Appellant's Motion.[FN1]

> FN1. Based on this conclusion, the Court will not address Appellee's remaining bases for denial.

An appropriate Order will be entered.

*ORDER*

At Wilmington, this 9th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan (D.I.31) is *DENIED.*

D.Del.,2004.
In re Polaroid Corp.
Not Reported in F.Supp.2d, 2004 WL 253477 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV01353 (Docket) (Aug. 02, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB NO. 5

Westlaw.

Not Reported in F.Supp.2d Page 1

Not Reported in F.Supp.2d, 2001 WL 493266 (D.N.J.), 2001-1 Trade Cases P 73,201

**(Cite as: Not Reported in F.Supp.2d)**

**H**

Briefs and Other Related Documents

United States District Court, D. New Jersey.
NOVARTIS CONSUMER HEALTH, INC., Plaintiff
v.
JOHNSON & JOHNSON-MERCK CONSUMER PHARMACEUTICALS CO. Defendant.
**No. 00-5361 (WGB).**

Jan. 17, 2001.

[OPINION]

BASSLER, D.J.

*1 Plaintiff Novartis Consumer Health, Inc.'s ("Novartis") and Defendant Johnson & Johnson-Merck Consumer Pharmaceuticals Company ("J & J") produce competing over-the-counter ("OTC") drugs that treat heartburn. Novartis produces and markets the Maalox brand of antacids while J & J produces and markets the Mylanta brand. J & J's newest addition to its line of OTC antacids is Mylanta Night Time Strength ("MNTS").

By Opinion and Order dated December 22, 2000 [2001-1 TRADE CASES ¶ 73,200], this Court granted Novartis's application for a preliminary injunction against J & J's designation of "Night Time Strength." In so ruling, the Court found that MNTS antacid conveyed three false messages: (1) MNTS is more effective than other antacids at relieving nighttime heartburn symptoms; (2) MNTS is specially formulated to relieve nighttime heartburn; and (3) MNTS provides all night relief.

Accordingly, the Court enjoined J & J from: (1) marketing and disseminating MNTS under that name; (2) using the designation "Night Time" or "Night Time Strength" on any antacid product; (3) otherwise claiming, either explicitly or implicitly, that Mylanta Night Time Strength is specially formulated for night time heartburn, provides all night relief, and/or possesses a strength that correlates with its efficacy.

J & J now seeks a stay of that Order pending its appeal to the Court of Appeals.FN1 In the alternative, J & J requests an increase in the amount of the security bond posted by Novartis as a condition of the preliminary injunction. The request for an increased bond is still being briefed by the parties. Therefore, the Court will make a determination on that motion at a later date.

FN1. The Court did not receive the moving and opposition papers regarding this stay application until January 10, 2001. Nevertheless, on January 16, 2001, the day after a court holiday and prior to the issuance of this Opinion, J & J filed before the Third Circuit an emergent application for a stay.

For the following reasons, J & J's motion for a stay pending appeal is denied.

## I. BACKGROUND FN2

FN2. For a more detailed background, the parties are referred to the Court's December 22, 2000 Opinion.

On October 31, 2000, Novartis filed a complaint against J & J alleging that, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, J & J's advertisements regarding Mylanta Night Time Strength ("MNTS") and the name of the product itself are false and misleading. On December 8, 2000, Novartis filed a motion for preliminary injunction. After hearing oral argument on Novartis's motion on December 18 and 19, 2000, the Court issued its December 22, 2000 Opinion and Order.

## II. DISCUSSION

### A. *Standard for Stay Pending Appeal*

To grant a stay pending appeal, the court must determine: (1) whether the movant is likely to succeed on the merits of the appeal; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) whether the stay will harm the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

These factors are nearly identical to those that the Court considered in ruling on the preliminary injunction applica-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



tion: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer "irreparable harm" without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest. Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir.1995); American Tel. & Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426 (3d Cir.1994). Consequently, the parties raise in this application essentially the same arguments as those previously presented to the Court on Novartis's motion. J & J offers no new circumstances to support its application for a stay pending appeal. Therefore, granting J & J's motion for stay would effectively be a reconsideration and reversal of the Court's December 22nd decision.

B. *Likelihood of Success on the Merits*

*2 In its previous Opinion, the Court found that Novartis is likely to succeed on the merits. Specifically, the Court concluded that the "Night Time Strength" name and advertising is literally false because it necessarily implies false claims of superior efficacy and special nighttime formulation. Based on the results of Novartis's consumer survey, which the Court determined was reliable, the Court also found that there was sufficient consumer confusion to show that under the Lanham Act, the "Night Time Strength" name tends to deceive or mislead a substantial portion of the intended audience.

Having found that Novartis is likely to succeed on the merits, for the same reasons noted in its December 22, 2000 Opinion, the Court finds that J & J is not likely to succeed on the merits of its appeal.

C. *Irreparable Harm*

J & J argues that if it is preliminarily enjoined from using the designation "Night Time Strength," in addition to losing the value of what it spent to bring MNTS to market, J & J would have to relaunch its product under a new name and incur the related expense pending completion of this litigation. Moreover, regardless of the outcome, J & J claims it would be commercially unfeasible for it ever to return to the original MNTS name. The Court previously considered this argument in examining the balance of hardships. *See* December 22, 2000 Op., at 39-40.

J & J, however, contends that the Court in fact disregarded this injury to J & J by stating that it was "self-imposed" because J & J had engaged in false advertising. J & J argues that this "assumes" that Novartis will succeed on the merits. The Court did not "assume," but rather, relied on a finding that it had specifically made. In contrast, J & J assumes that it will prevail on appeal when it argues that without the entry of a stay pending appeal, effectively forcing J & J to spend considerable money to relaunch its product under a new name and to abandon the original product name would be improper.

D. *Harm to Novartis*

For the Court to now conclude that Novartis would not suffer irreparable injury if a stay were granted would completely reverse this Court's December 22, 2000 ruling that Novartis would suffer immediate irreparable injury absent a preliminary injunction. J & J claims that the Court ought to undo its prior decision because the Court committed an error of law when it found that Novartis need only show a reasonable basis for believing that Novartis is likely to suffer irreparable injury, rather than specific evidence that the challenged claim actually resulted in some definite loss. It claims that these findings might support a permanent injunction, but not a preliminary injunction. The Court disagrees with J & J. *See* Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 316 (2nd Cir.1982) (noting that on motion for preliminary injunction, Lanham Act plaintiff "need not even point to an actual loss or diversion of sales" but "must submit proof which provides a reasonable basis" for belief that he or she is likely to be injured as a result of false advertising); Stiffel Co. v. Westwood Lighting Group, 658 F.Supp. 1103, 1115 (D.N.J.1987) ("moving party carries its burden of demonstrating irreparable harm when it offers 'proof providing a reasonable basis for the belief that ... [it] is likely to be damaged as a result of the false advertising" ' (citations omitted)).

E. *Public Interest*

*3 Because J & J has not shown that it is likely to succeed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 493266 (D.N.J.), 2001-1 Trade Cases P 73,201
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

on an appeal, it is in the public interest to prevent the continued dissemination of false advertising regarding an OTC antacid.

III. CONCLUSION

For the reasons noted herein, J & J's motion for a stay pending appeal is denied.

D.N.J.,2001.
Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.
Not Reported in F.Supp.2d, 2001 WL 493266 (D.N.J.), 2001-1 Trade Cases P 73,201

Briefs and Other Related Documents (Back to top)

• 2:00CV05361 (Docket) (Oct. 31, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.